2491

Melanie Bolt ANDERSON, as Personal Representative of the Estate of
Joe Shawn McLees, Deceased, Respondent v. GREEN BULL, INC.,
Appellant.

(471 S.E. (2d) 708)

Court of Appeals

*Michael A. Farry* and *David A. Wilson,* both of *Horton, Drawdy, Ward & Johnson,* of Greenville, *for appellant.*

*Eugene C. Covington, Jr.,* of *Covington & Patrick,* of Greenville, *for respondent.*

Heard Sept. 13, 1995.

Decided Apr. 8, 1996; Reh. Den. June 20, 1996.

GOOLSBY, Judge:

Melanie Bolt Anderson, as Personal Representative of the Estate of Joe Shawn McLees, Deceased, initiated this strict liability action against Green Bull, Inc. At the close of all evidence, Green Bull made a motion for a directed verdict, which the trial court denied. The jury returned a $50,000 verdict for Anderson. Green Bull then made a motion for judgment notwithstanding the verdict, which the trial court also denied. Green Bull appeals. We reverse.

We are required to view the facts in the light most favorable to the nonmoving party, here Anderson, to determine whether the trial court should have granted

the motions for directed verdict and judgment notwithstanding the verdict. *Crossley v. State Farm Mut. Auto Ins. Co.,* 307 S.C. 354, 415 S.E. (2d) 393 (1992). Here, the evidence, when so viewed, suggested that on June 24, 1992, McLees and Racy Paugh, another employee of Tucker Roofing, were replacing a roof on a house over which ran two high-voltage power lines and while they were moving a twenty-six-foot aluminum conveyor ladder[1] from one end of the house to the other, McLees was electrocuted and Paugh was injured.

Green Bull sold the ladder to Tucker Roofing in 1988. The ladder was sold in three eight-foot sections and assembled by Tucker Roofing. Tucker Roofing never made any modifications to the ladder. The ladder contained a red warning label that read, "KEEP ENTIRE UNIT CLEAR OF ALL UTILITY AND ELECTRICAL WIRING."

■ In a products liability case based solely on the theory of strict liability, the plaintiff must establish the following three things: (1) he was injured by the product; (2) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant, who is engaged in the business of selling such a product; and (3) the injury occurred because the product was in an unreasonably dangerous, defective condition. *Harris v. Rose's Stores, Inc.,* 315 S.C. 344, 433 S.E. (2d) 905 (Ct. App. 1993).

■ In order to prevent a product from being unreasonably dangerous, the seller may be required to give a warning on the product concerning its use. RESTATEMENT (SECOND) OF TORTS § 402A cmt. j, at 353 (1965).[2] A product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries caused by the use of the product if the user ignores the warning. *Id.* Further, a seller is not required to warn of dangers or potential dangers that are generally known and recognized. *Dema v. Shore Enters., Ltd.,* 312 S.C. 528, 435 S.E (2d) 875 (Ct. App. 1993); *Koester v. Carolina Rental Ctr.,* 311 S.C. 115, 427 S.E. (2d) 708 (Ct. App. 1993), *rev'd on other grounds,* 313 S.C. 490,

---

[1] A conveyor ladder has a ladder frame with a motorized conveyor or trolley that rides up and down the ladder's rails to lift material.

[2] S.C. Code Ann. § 15-73-30 (1977) incorporates by reference the comments in Restatement of Torts, Second § 402A.

443 S.E (2d) 392 (1994). It follows, then, that a product cannot be deemed either defective or unreasonably dangerous if a danger associated with the product is one that the product's users generally recognize. *See RESTATEMENT (SECOND) OF TORTS* § 402A cmt. g, at 351 (1965) (a product is defective *only* "where the product is, at the time it leaves the seller's hands, in a condition *not contemplated by the ultimate consumer,* which will be unreasonably dangerous to him") (emphasis added); F. PATRICK HUBBARD & ROBERT L. FELIX, *THE SOUTH CAROLINA LAW OF TORTS,* 242 (1990) ("[T]he defendant is not held to an awareness of unforeseeable uses or misuses or the unreasonable assumption by the plaintiff of *obvious hazards* accompanying the product, *whether these issues arise as matters of defenses or of defining defect.*") (emphasis added); *see also Hunt v. Harley-Davidson Motor Co., Inc.,* 147 Ga. App. 44, 248 S.E. (2d) 15, 16 (1978) (the manufacturer is under no duty "to guard against injury from a patent peril or from a source manifestly dangerous").

Here, there was no evidence from which the jury could reasonably infer the roofers' injuries were caused by a defect in the ladder itself. Any person or normal intelligence would know "the risk posed by an aluminum ladder in close proximity to an energized high-voltage line." *Stancill v. Potomac Elec. Power Co.,* 744 F. (2d) 861, 866 (D.C. Cir. 1984). Indeed, witnesses for both sides testified a person holding an aluminum ladder would know to stay away from overhead power lines. Even though the conductivity of the ladder caused it to be dangerous, the conductivity, then, did not cause the ladder to be either defective or unreasonably dangerous because the conductivity of an aluminum ladder is a condition commonly known and recognized.[3]

---

[3] Anderson suggests in her brief that the jury could have reasonably found the ladder was defective because Green Bull failed to warn users that the ladder should be adjusted, in this case shortened, whenever the ladder's length would make it more dangerous because of surrounding conditions, in this case overhead high-voltage transmission lines.

But adjusting the ladder's length by shortening it is merely a particular precaution a user might take to avoid a generally known dangerous condition (and, here, one expressly warned against, *i.e.,* contact with electrical wiring). Because Green Bull was not required to warn users to stay clear of power lines, it follows that Green Bull was also not required to warn them to take *specific measures* to stay clear of power lines, whether it was by shortening the ladder, by not using the ladder and using another instead, by moving the ladder elsewhere, or by some other method.

Anderson also contends the jury could have reasonably found that the accident was the result of arcing,[4] and that the danger of arcing is not a subject of common knowledge. The record, however, contains no evidence from which the jury could reasonably conclude that arcing most probably took place. At most, the evidence shows it was "possible" that arcing occurred. *See Harris v. Rose's Stores, Inc.,* 315 S.C. 344, 433 S.E. (2d) 905 (1993) (causation based upon a possibility rather than a probability is not sufficient for a plaintiff to recover in a products liability case; where the cause of a plaintiff's injuries may be as reasonably attributed to an act for which the defendant is not liable as to one for which it is liable, the plaintiff has not met his burden of proof in establishing the defendant's defective product proximately caused the plaintiff's injuries).

Because there was no evidence from which the jury could reasonably infer the ladder was either defective or unreasonably dangerous the trial court erred in denying Green Bull's motion for directed verdict and judgment notwithstanding the verdict.[5]

Reversed.

CURETON, J., concurs in a separate opinion.

HOWELL, C.J., dissents in a separate opinion.

CURETON, Judge: (Concurring.)

I agree with Judge Goolsby that the trial court's refusal to direct a verdict for Green Bull should be reversed. In an action based on strict tort liability where a design defect is alleged, plaintiff's case is complete when he has proven the product, as designed, was in defective condition unreasonably dangerous to the user when it left the control of the manufacturer and the defect caused his injuries. *Madden v. Cox,* 284 S.C. 574, 328 S.E. (2d) 108 Ct. App. 1985); *Schall v. Sturm, Ruger Co.,* 278 S.C. 646, 300 S.E. (2d) 735 (1983). The test for determining whether a product is defective is whether the

---

[4] Arcing occurs when an electrical current "jumps" into a conductive source without direct contact with the source.

[5] Because we decide this case on this ground, we do not address Green Bull's remaining arguments.

product is unreasonably dangerous to the ultimate consumer given the conditions and circumstances that foreseeably attend the use of the product. *Claytor v. General Motors Corp.*, 277 S.C. 259, 286 S.E. (2d) 129 (1982); *Kennedy v. Custom Ice Equip. Co.*, 271 S.C. 171, 246 S.E. (2d) 176 (1978). While it is true that almost any product can be made safer, the pertinent inquiry is whether the product as supplied is unreasonably dangerous. *Claytor*, 277 S.C. 259, 286 S.E. (2d) 129. Both industry standards and the state of the art at time of manufacture are relevant to show the reasonableness of the product's design. *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E (2d) 321 (Ct. App. 1995).

Experts for both parties testified the ladder's aluminum design did not violate any safety standard, and that a fiberglass designed ladder was not the industry standard at the time the ladder was manufactured. It is common knowledge that an aluminum ladder will conduct electricity. I would hold as a mater of law that there is nothing inherently unreasonably dangerous about a ladder made of aluminum. Nevertheless, Anderson's expert testified that the hazard presented by the use of aluminum ladders by persons in the roofing business was well know in the ladder industry at the time of the ladder's manufacture. Thus, he opined that as a minimum, the ladder was unreasonably dangerous to this class of consumer if placed in their hands without proper warning. This opinion is partly supported by the fact Green Bull placed a warning on the ladder. A product may be deemed defective, although faultlessly made, if it is unreasonably dangerous to place the product in the hands of the user without a suitable warning. *Marchant v. Lorain Div. of Koehring*, 272 S.C. 243, 251 S.E. (2d) 189 (1979). By the same token, a product is not defective for failure to warn of an obvious danger. *Dema v. Shore Enter.*, 312 S.C. 528, 435 S.E. (2d) 875 (Ct. App. 1993). The question here presented is whether Green Bull, knowing the foreseeable use of the ladder, had a duty to warn its users against the hazard of bringing the ladder into contact with electrical lines, and if so, whether the warning it placed on the ladder was adequate.

I agree with Anderson that the evidence gives rise to a reasonable inference that Green Bull had a duty to warn consumers of the hazard of injury accompanying use of the ladder

around electricity. *Livingston v. Noland Corp.*, 293 S.C. 521, 362 S.E. (2d) 16 (1987) (manufacturer of a product is liable for failing to warn if it has reason to know the product is likely to be dangerous for its intended use; it has no reason to believe the consumer will realize the potential danger; and it fails to exercise care to inform of facts which make it likely to be dangerous). Anderson's expert testified that the deficiency in Green Bull's warning was that it did not instruct users to shorten the ladder to the length necessary for each particular use. The ladder came in three eight-foot sections and was assembled by McLees' employer. The expert testified that no more than sixteen feet of ladder was needed for this job and if the ladder had been shortened to sixteen feet, the accident would never have happened. I find it difficult, under the facts of this case, to lay the blame at Green Bull's door for McLee's employer using three sections of the ladder when only two sections were sufficient. Further, I would hold as a matter of law that a warning admonishing a user to keep the ladder clear of electrical wires is just as effective as one instructing a user to shorten the ladder to its required length for a particular use. Whether the ladder is kept away from electrical lines by shortening it or by its placement, the result is the same.

Finally, Anderson argues in her brief that there is at least an inference that McLees' death caused by arcing, which can occur when an object comes in close proximity to an electrical source, and that the instant warning does not in any way address that hazard. While Green Bull's witness on cross-examination testified that arcing was possible, he did not present that as a probability in this case. In fact, he ends this colloquy with Anderson's counsel with the statement that if McLees had kept the ladder "clear of all utility and electrical wiring as everybody knew you were supposed to do then we wouldn't be here today." Moreover, both briefs speak in terms of the ladder coming in contact with the electrical line. Thus, even if we were to conclude that arcing was a hazard that required a warning, there is no evidence that the lack of such warning was the proximate cause of McLees' death. Having concluded the warning in this case was adequate, I would reverse.

HOWELL, Chief Judge, dissenting:

I respectfully dissent. The majority concludes the trial

judge erred in refusing to grant a directed verdict or judgment notwithstanding the verdict. I would hold the trial judge properly found the issues in this case were for the jury's determination, and affirm.

In every action the plaintiff must establish the elements of his cause of action. This is an action in strict liability, and Anderson had the burden of establishing the ladder as manufactured was unreasonably dangerous, and the dangerous condition proximately caused the injury. Whether Anderson met this burden was a question of law, therefore the threshold determination by the trial judge was whether there was sufficient evidence to support the proposition that the product was unreasonably dangerous. *See Claytor v. General Motors Corp.*, 277 S.C. 259, 286 S.E. (2d) 129 (1982). The trial judge must balance the utility of the risk inherent in the design with the magnitude of the risk in using the product, *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E. (2d) 321 (Ct. App. 1995), and this consideration must include the cost involved in added safety and the industry standards that existed at the time the product was manufactured. *Reed v. Tiffin Motor Homes, Inc.*, 697 F. (2d) 1192 (4th Cir. 1982). There is no dispute that this product is useful when constructed solely of aluminum. The experts agreed that in regard to the weight of the ladder, aluminum is preferred. However, both experts also testified aluminum is highly conductive. Studies by the Consumer Affairs Commission produced by the plaintiff established that between 1982 and 1985 an average of 65 people per year lost their lives by electrocution while using ladders. These studies also show that most electrocutions involving ladders occur while moving the ladders into place, that a person's ability to judge heights is commonly unreliable, and most people do not attach significance to exact measurement because they mistakenly believe that overhead wires are normally insulated. All these factors are relevant in the judge's balancing of the utility and the risk of the product.

The issue is not whether the trial judge considers the product unreasonably dangerous, but what the evidence reflects may reasonably be regarded as unreasonably dangerous. If the trial judge determines the product can be considered unreasonably dangerous, then the ultimate question of whether it is in fact unreasonably dangerous is for the jury's determi-

nation. *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E. (2d) 589 (1994). In considering Green Bull's motion for a directed verdict, the trial judge was required to view the evidence and all its reasonable inferences in the light most favorable to Anderson. *See Crossley v. State Farm Mut. Auto Ins. Co.*, 307 S.C. 354, 415 S.E. (2d) 393 (1992) (in deciding motions for directed verdict and judgment notwithstanding the verdict, the evidence and all reasonable inference must be viewed in the light most favorable to the nonmoving party). Because this court is not a jury, we cannot weight the evidence nor consider matters of credibility. *Young v. Bost*, 241 S.C. 289, 128 S.E. (2d) 118 (1962); *Austin v. Independent Life and Accident Ins. Co.*, 296 S.C. 156, 370 S.E (2d) 918 (Ct. App. 1988).

On the issue of the defective nature of the ladder, the plaintiff's expert testified the state of the art in 1988 at the time of the manufacture of the ladder was such that the usefulness and desirability would not be compromised by either constructing it entirely of fiberglass or inserting a nonconductive section made of fiberglass above the point where anyone would handle the ladder and below the point where it would likely come in contact with electricity. The only disadvantages would be a possibility of wear that would threaten the structural integrity and a problem of some added weight affecting portability. Both problems, according to him, are negligible, because the weight will not increase more than ten percent and the wear could be easily monitored to alert the user that the replacement sections should be installed. He further testified that electrocution hazards have compelled manufacturers of C.B. antennas, television antennas, and sailboat masts to construct their products using nonconductive links to reduce the likelihood of electrical shock when they come into contact with electrical wire. It was also pointed out that electrical utility companies use solid fiberglass ladders. According to him the use of either solid fiberglass or fiberglass nonconductive links virtually negates the chance of electrical shock and the cost involved would be minimal.

The defendant's expert agreed the state of the art was such that the fiberglass could be used in either total construction or in nonconductive links without compromising the utility of the ladder except to the extent wear would threaten the structural integrity. However, he also testified the utility of the lad-

der would be compromised by the added weight. He disagreed that the use of nonconductive link and to some extent a solid fiberglass ladder would negate the chance of electrocution. He testified the hoist would still require a steel cable that could conduct electricity, and a fiberglass construction presented the added danger in the roofing industry of the fiberglass becoming contaminated and lulling the user into a false sense of security, thus increasing the danger of electrocution. He further testified a one-foot nonconductive link would not be adequate because electricity can arc as much as one foot bridging the nonconductive link. A recognized defect of design is material used in the product which is of inadequate strength or quality. *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E. (2d) 173 (1969) (manufacturer liable for design defect where it could reasonably be concluded that a motor vehicle was manufactured from material which could not tolerate a frequently encountered aspect of the environment in which it would be employed). I would hold, as the trial judge did, there was ample competent evidence in the record for the trial judge to submit the issue of whether the ladder was defective by design to the jury.