543 S.E.2d 264

**Pamela C. CURCIO, as Personal Representative of the Estate of Dennis M. Turner, Appellant,**

v.

**CATERPILLAR, INC. a.k.a Caterpillar Tractor Company, Respondent.**

**No. 3307.**

Court of Appeals of South Carolina.

Heard Jan. 9, 2001.

Filed Feb. 7, 2001.

Refiled Feb. 26, 2001.

Rehearing Denied March 26, 2001.

John Kassel and B. Randall Dong, of Suggs & Kelly, of Columbia, for appellant.

W. Frances Marion, Jr., of Haynsworth, Sinkler & Boyd, of Greenville, for respondent.

GOOLSBY, Judge:

A jury awarded Pamela C. Curcio, as Personal Representative of the Estate of Dennis M. Turner, $500,000 in a wrongful death action against Caterpillar, Inc. The trial court later set the verdict aside and dismissed the complaint. Curcio appeals. We affirm.

## BACKGROUND

Turner worked as a heavy-equipment mechanic for Blanchard Machinery Company in Simpsonville, South Carolina. On March 23, 1994, he was crushed to death while performing maintenance on a Caterpillar 953 Track Loader.

The Caterpillar 953 Track Loader operates on a series of hydraulic pumps. The cab of the loader is located over the engine and pumps. To remove the engine for repairs, the cab must be tilted forward. The Caterpillar Disassembly & Assembly Manual gives instructions for tilting the cab to either 24 degrees or 90 degrees. At either position, the cab is bolted to the frame of the machine to hold it in place, and brace bars are provided for this purpose. If the cab is not bolted to the frame, it is chained to the front implement of the machine.

According to the manual, the engine can be started when the cab is tilted to 24 degrees, but the transmission stays in a neutral position. In contrast, the manual has the following warning for tilting the cab to 90 degrees:

> **Do not start the engine when the cab/ROPS/platform[1] is at 90°. The governor control, implement hydraulics, speed-direction and speed-brake linkages are disconnected when the cab/ROPS/platform is tilted to 90°. If the valve spools were moved either accidentally or intentionally when the linkages were disconnected, uncontrolled lift arm and/or track movement will occur when the engine is started. As a result, it is possible for the brace group which retains the cabs/ROPS/platform to fail. This can result in severe injury to a serviceman or to bystanders and/or damage to the machine.**
>
> **If the engine must be started, first, lower the cab to 24° reconnect to the hydraulic jack, and install the support bracket. . . .**

(Boldface in original.) In addition, a warning in boldface print appears near the beginning of the manual advising service personnel to "[d]isconnect batteries before performance of any service work."

As noted in the manual, various warnings appear on the loader itself. Located adjacent to where the brace is bolted to the frame when the loader is tilted to 24 degrees is the following alert:

**WARNING**

PERSONAL INJURY CAN OCCUR IF IMPROPER PLATFORM TILTING PROCEDURES ARE USED. SEE

---

1. ROPS is an abbreviation for rollover protective structure.

MAINTENANCE GUIDE FOR PROCEDURE TO TILT PLATFORM TO THE 24° POSITION.

- Before raising platform, remove control linkage pins to prevent damage to the linkage.
- Install platform support link properly before any work is done on or under the raised platform to ensure it will not fall.
- Reinstall and properly tighten the ROPS mounting bolts to prevent reduction of rollover protection.

SEE SERVICE MANUAL PROCEDURE TO TILT PLATFORM TO THE 90° POSITION. DO NOT <u>RUN</u> THE ENGINE WITH THE PLATFORM TILTED <u>TO THE 90° POSITION. **LIFT ARMS MAY RAISE AND COULD BREAK PLATFORM 90° SUPPORT BRACKET AND PLATFORM WILL FALL.**

(Boldface in original, underlining added.)

To remove the engine for repairs, Turner had the cab tilted to an angle greater than 90 degrees so that it rested on the tilt cylinders in a "laid-over" position. Although Caterpillar did not include this procedure in the manual, several mechanics testified that they chose to use it because it appeared less precarious than the 90–degree position and required less time. Dr. Jeffrey Warren, Curcio's mechanical engineering expert witness, testified that, in the 90–degree position, the 1,933–pound cab is held in place by only the installation of a small bracket with a single bolt. In contrast, Warren testified that 1,148 pounds of force would be necessary to pick up the cab from its laid-over position and cause it to tip over onto the person working beneath it.

Contrary to the practice of other mechanics who used the laid-over position, Turner did not chain the cab. Furthermore, he apparently made no attempt to bolt the cab to the frame. It appears that, after removing and overhauling the engine of the loader, Turner was crushed to death beneath the cab while he was preparing to insert the engine back into the loader. No one saw the accident happen.

Turner's coworkers discovered his body lying between the transmission and the cab. Mechanics observed that the battery disconnect key was in the ignition switch in the "on" position and the batteries were connected. The loader bucket,

which had earlier been down, was raised because an implement control lever was inadvertently moved to the "raise" position, activating the hydraulic system. Investigators surmised that the lift arms and bucket moved, causing the cab to fall on Turner. Mechanic Ben Samuel testified that, if Turner had used the 24-degree brace, the brace would have caught the cab and the accident would not have happened.

Curcio, in her capacity as personal representative of Turner's estate, filed this action asserting claims for negligence, strict liability, and breach of implied warranty. She later voluntarily dismissed the warranty claim and proceeded to trial on the two remaining claims.

Curcio argued Caterpillar was negligent in designing and manufacturing the loader and in failing to warn of foreseeable dangers associated with its use and maintenance. Curcio further contended the loader was unreasonably dangerous because of the absence of an electrical interlock device that allegedly could have prevented the accident.

Caterpillar took the position that Turner disregarded warnings to disconnect the batteries and secure the cab properly. In response to these contentions, Curcio called Warren, who testified the warning on the loader not to "run" the engine was inadequate because it fell short of cautioning service personnel not to "crank" the engine. Warren stated that, to him, "there's a big difference from a mechanic's point of view as to whether he's cranking the engine or running the engine." Warren also testified that an electrical interlock device would have prevented the accident and that the cost for including such a device would most likely have been minimal.

At the close of Curcio's case, Caterpillar moved unsuccessfully for a directed verdict arguing: (1) the warnings on the loader were adequate and Turner's failure to follow those warnings was the proximate cause of his death, and (2) an interlock device was not only unnecessary but ineffective in that it would only disable the ignition switch, which would necessarily have been disconnected once the cab was tilted past 90 degrees. At the close of the testimony, Caterpillar renewed its motion on the same grounds stated in its initial motion, but elaborated on them by further submitting that: (1) the interlock device would not have prevented Turner's

death because of evidence that Turner had bypassed the electrical system,[2] and (2) the failure to use the term "crank" in the warning was not evidence that the warning was deficient. Again, the trial court denied the motion and submitted the issues of negligence and strict liability to the jury. The jury found for Caterpillar on the negligence action, but awarded Curcio $500,000 on her strict liability claim.

Caterpillar moved for judgment notwithstanding the verdict and a new trial. The trial court granted a new trial on the marital relationship between Curcio and Turner.[3] In addition, the trial court held that the warnings were adequate as a matter of law, but found there was sufficient evidence to sustain the verdict based on the defective design claim.

Pursuant to a subsequent motion by Caterpillar under Rule 59(e), SCRCP, however, the trial court reviewed the matter and set the verdict aside, holding, "South Carolina law does not require that a manufacturer refine a product, if it is safe when used in accordance with adequate warnings."

## ANALYSIS

### I.

■ Curcio first argues the trial court's decision to set the verdict aside should be reversed because she presented evidence at trial that the warning was inadequate. Specifically, she contends the trial court impermissibly weighed the evidence in discounting Warren's testimony that the warning was ambiguous. We reject this argument.

In Chapter 73 of Title 15 of the South Carolina Code, the South Carolina General Assembly adopted verbatim section 402A of the *Restatement, Second, of Torts* (1965) to provide as follows:

---

2. Caterpillar contended that Turner had bypassed the electrical system by hot-wiring the starter.

3. The trial court had initially ruled Caterpillar was precluded from contesting the legal relationship between Curcio and Turner because of a finding by the probate court that Curcio and Turner were common-law husband and wife. Pursuant to Caterpillar's motion, the trial court reversed this ruling, noting the probate court proceeding was an uncontested matter to which Caterpillar had not been made a party.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.[4]

The comments to section 402A have been incorporated by reference as the legislative intent of Chapter 73.[5] Citing comment j, this court has stated that "a seller may prevent a product from being 'unreasonably dangerous' if the seller places an adequate warning on the product regarding its use." [6]

The trial court initially denied Caterpillar's motion for judgment notwithstanding the verdict, holding there was sufficient evidence to support Curcio's recovery under the defective design claim. In the same order, however, the trial court held the warnings at issue were adequate as a matter of law. In its subsequent order setting the verdict aside, the trial court rejected the design failure claim, holding this claim was likewise barred because of the earlier decision on the warning theory.

In holding the warning to be adequate as a matter of law, the trial court not only addressed Warren's assertion that the

---

4. S.C.Code Ann. § 15–73–10' (1976).

5. *Id.* § 15–73–30. Turner was a "user" of the product in the sense that he was "utilizing it for the purpose of doing work upon it." *Restatement (Second) of Torts* § 402A cmt. 1 (1965).

6. *Allen v. Long Mfg. NC, Inc.,* 332 S.C. 422, 427, 505 S.E.2d 354, 357 (Ct.App.1998), *cert denied* (May 28, 1999).

failure to use the word "crank" in the warning made it deficient, but also noted:

> Before working on a Loader, a mechanic is specifically warned to: "Disconnect batteries before performance of any service work." Turner chose to ignore this warning. At the time of the accident, Turner was working on the Track Loader with the batteries connected. *Had the batteries been disconnected the accident would not have happened.*

(Emphasis added.) We find nothing in the record or the briefs suggesting that Curcio has challenged either the substance or the propriety of this ruling. The manner in which this ruling was set forth by the trial court indicates the ruling was intended as an alternative basis to support the holding that the warning was adequate as a matter of law notwithstanding the impact of Warren's testimony on this issue. Because the trial court's ultimate conclusion on the sufficiency of the warning can be upheld on an independent ground, it is unnecessary for us to consider whether or not the trial court impermissibly discounted Warren's statements.[7]

## II.

■ Curcio further maintains that, irrespective of the efficacy of the warnings, she made a showing that a proposed alternative design that could have prevented Turner's death was available and economically feasible. Based on this premise, she argues she presented sufficient evidence at trial to raise an issue of fact as to whether the loader was defectively designed and therefore unreasonably dangerous. She further argues that, because the cost of including an interlock device would have been minimal compared with the cost of the loader itself, the loader could have been made safer without the

---

7. *See I'On v. Town of Mt. Pleasant,* 338 S.C. 406, 420–21, 526 S.E.2d 716, 723 (2000) ("[A]n appellate court may affirm the lower court's judgment for any reason appearing in the record on appeal."); *Weeks v. McMillan,* 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct.App.1987) ("Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous."); *Dwyer v. Tom Jenkins Realty, Inc.,* 289 S.C. 118, 344 S.E.2d 886 (Ct.App.1986) (holding a judgment will not be disturbed when unchallenged findings are sufficient to support it).

necessity of a warning and was therefore defectively designed. We disagree.

In determining the verdict should be set aside based on its prior findings that the warnings were adequate as a matter of law, the trial court stated:

> Plaintiff urges adoption of the *Restatement (Third) of Torts*, which allows recovery based on defective design even with an adequate warning. Defendant has demanded adherence to existing South Carolina law. This court declines Plaintiff's invitation. The language in *Allen v. Long Mfg.* is clear. If the Court of Appeals desires a retreat from *Allen v. Long Mfg.* by, for example, characterizing parts of its opinion as dicta, that is a matter for the Court of Appeals, not a mere trial judge.

In determining that an adequate warning made the loader safe for use in spite of any alleged defects, the trial court relied on comment j to section 402A of the *Restatement (Second) of Torts*, as interpreted in *Allen*.[8] We have found no cases from this jurisdiction that contradict either comment j or the interpretation of this comment in *Allen*[9]; therefore, we conclude the trial court correctly applied existing South Carolina law to hold that a product is not unreasonably dangerous if accompanied by adequate warnings that, if followed, make the product safe for use.[10]

---

**8.** In *Allen*, this court noted that comment j "has been correctly interpreted to mean when an *adequate* warning is given, the manufacturer may assume that it will be heeded by the product user." *Allen*, 332 S.C. at 432–33, 505 S.E.2d at 360 (emphasis in original).

**9.** *See, e.g., Claytor v. General Motors Corp.*, 277 S.C. 259, 264, 286 S.E.2d 129, 132 (1982) (stating that, if products are "properly prepared, manufactured, packaged *and accompanied with adequate warnings and instructions*, they cannot be said to be defective") (emphasis added); *Marchant v. Mitchell Distrib. Co.*, 270 S.C. 29, 240 S.E.2d 511 (1977) (holding the absence of an optional safety device on a crane did not create an issue of fact as to whether the product was unreasonably dangerous).

**10.** Because our holding is based on our decision to follow prior cases holding that a defendant is not liable for a design defect in a product if the product is accompanied by adequate warnings, we decline to address the merits of Curcio's argument that an interlock device would have prevented Turner's death.

### III.

■ Curcio further argues "the trial court had already established as the law of the case that [she] could recover if *either* a defective warning *or* a defective design were found to be the proximate cause of ... Turner's death." (Emphasis in original.) In support of her position, Curcio notes that Caterpillar did not base its directed verdict motion on the proposition that the finding of an adequate warning "cured" any design defects and rendered its product "safe" and that Caterpillar never objected to jury instructions that liability could be based on either defective warning or unreasonably dangerous design. We find no merit to these arguments.

■ In our view, Caterpillar's contention in its directed verdict motion that the warning was adequate as matter of law was sufficient to raise the argument that Curcio would likewise be precluded from recovering for a design defect. First, in its initial directed verdict motion, the grounds of which were incorporated into its final directed verdict motion, Caterpillar cited the case of *Anderson v. Green Bull* for the proposition that a product bearing a warning that is safe for use if the user follows the warning is "neither defective nor unreasonably dangerous." [11] Furthermore, "a product that is already deemed safe for consumer use as produced need not display a warning to prevent it from being 'unreasonably dangerous,' absent a finding that there is a duty to warn." [12] It follows that, in a products liability case in which the theory of recovery is strict liability, the only inference of any import to be made from a finding that a given warning is adequate is that the product "is not in defective condition nor is it unreasonably dangerous." [13]

We further hold that, under the circumstances of this case, it was not incumbent on Caterpillar to object to the instruction by the trial court that the jury could "consider separately and independently two alternative theories of liability: defect by

---

**11.** 322 S.C. 268, 270, 471 S.E.2d 708, 710 (Ct.App.1996), *cert. denied* (December 19, 1996).

**12.** *Allen,* 332 S.C. at 431, 505 S.E.2d at 359.

**13.** *Restatement (Second) of Torts* § 402A cmt. j (1965).

adequate warning, and defect by lack of a reasonable safety device which could have prevented the accident."

Although the trial court characterized the theories of inadequate warning and design defect as "independent bases on which to impose liability," it included the following instructions in its charge on strict liability:

In order to prevent a product from being unreasonably dangerous, a manufacturer may be required to give an adequate warning concerning the product regarding its use.

. . .

If a warning is required, a product bearing an adequate warning is neither defective nor unreasonably dangerous.... Where an adequate warning is given, the manufacturer may reasonably assume it will be read and heeded; and a product bearing an adequate warning, which is safe for use if followed, is not in a defective condition, nor is it unreasonably dangerous.

Read as a whole, then, the charge correctly explained that, if the jury found that the product came with adequate warnings, it followed that the product was neither in a defective condition nor unreasonably dangerous.[14] It was therefore reasonable for Caterpillar to expect that, even if the jury found that the loader had a design defect, there would still be no liability if the warning was adequate.

## IV.

Because we have affirmed the trial court based on our determination that Curcio failed as a matter of law to show that the Caterpillar 953 Track Loader was a defective or unreasonably dangerous product, we do not address her arguments concerning proximate cause.[15]

**AFFIRMED.**

---

**14.** *See Keaton v. Greenville Hosp. Sys.,* 334 S.C. 488, 514 S.E.2d 570 (1999) (stating a jury charge is correct if, when read as a whole, it contains the correct definition and adequately covers the law).

**15.** *See Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 543, 462 S.E.2d 321, 328 (Ct.App.1995) ("In order to recover under a strict liability theory, the plaintiff must establish that: (1) the defendant's product was in a defective condition unreasonably dangerous for its intended use; (2) the

STILWELL, J., concurs.

HEARN, C.J., dissents in a separate opinion.

HEARN, Chief Judge:

I respectfully dissent. The majority holds that the accident would not have occurred had Turner heeded the warning to disconnect the batteries and treats this finding by the trial judge as an alternate sustaining ground on which to affirm the grant of judgment notwithstanding the verdict. The logic seems to be that after Caterpillar provided one clear warning that was disregarded, any subsequent warning is immune from a determination of adequacy. I disagree.

In this case, Caterpillar foresaw that the batteries might be connected during maintenance work. The warning contested by Curcio states in part, "If the engine must be started, . . . ." Such an instruction contradicts the instruction that the batteries must be disconnected at all times during maintenance work. Given this contradiction, it does not follow that failure to follow one warning should preclude Curcio's argument concerning another warning. Moreover, the mere fact that Caterpillar warned against starting the engine is evidence that it knew its admonition about disconnecting the batteries might not be followed. Thus, I do not share the majority's view that the warning to disconnect the batteries vitiated any further duty by Caterpillar to provide adequate warnings.

I would hold that a jury issue was presented as to the adequacy of the warning. At trial, Curcio presented expert testimony distinguishing the words "crank," "run," and "start." The disputed words are all used in different ways throughout the manual. The expert testified that given the use of the words in the manual and the trade usage, Turner may have thought he could "crank" the engine if he did not "start" it.[16] No objection was lodged to the admission of this testimony or to the expert's qualifications.

---

defect existed when the product left the defendant's control; *and* (3) the defect was the proximate cause of the injury sustained.") (emphasis added), *cert. denied* (November 20, 1996); 2 Dan B. Dobbs, *The Law of Torts* § 354 (2001) (stating strict liability is imposed for only those products that are defective and unreasonably dangerous).

**16.** According to Curcio's expert, the distinction between these terms lies in the systems used. "Crank" suggests use of the cranking engine,

Generally, the adequacy of a warning is a jury question. *Allen v. Long Mfg. NC, Inc.,* 332 S.C. 422, 427, 505 S.E.2d 354, 357 (Ct.App.1998); *see* 63A Am.Jur.2d *Products Liability* § 1219 (1997). Here, the trial judge correctly sent this issue to the jury. However, I believe he erred in granting judgment notwithstanding the verdict.

In his order, the trial judge appears to have weighed the evidence in determining that the warnings were adequate as a matter of law, stating:

> No reasonable person (and certainly no mechanic like Turner) would adopt Mr. Warren's strained distinction between 'start' and 'crank.' Although not essential for purposes of this ruling, I note that Mr. Warren has absolutely no experience with heavy equipment. Conversely all witnesses with such experience understood the term 'start' to include any notion the engine was to be turned over by the electrical starter motor.

In considering a motion for judgment notwithstanding the verdict, the trial judge is concerned only with the existence of evidence, not its weight. *State v. Wakefield,* 323 S.C. 189, 196, 473 S.E.2d 831, 835 (Ct.App.1996). "When considering the motion, neither this court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence." *Reiland v. Southland Equip. Serv., Inc.,* 330 S.C. 617, 634, 500 S.E.2d 145, 154 (Ct.App.1998). Moreover, we will not disturb the factual findings of a jury unless no evidence reasonably supports those findings. *Horry County v. Laychur,* 315 S.C. 364, 367, 434 S.E.2d 259, 261 (1993). Therefore, I believe the trial judge erred in overturning the jury's verdict based on his own assessment of the evidence.

Further, I believe the issue of whether the design was defective was also properly submitted to the jury. The majority, relying on language from *Allen* and comment j to § 402A of the *Restatement (Second) of Torts,* states that a product may be cured of any unreasonable danger if the seller places an adequate warning on the product. However, because I disagree with the majority's alternate sustaining ground and would hold that a jury issue as to the adequacy of the warning

---

and "start" means rotate the engine until the cranking motor is no longer required and the engine runs on it own.

was created by the expert's testimony, I disagree with the majority's holding that the product was not unreasonably dangerous as a matter of law.

For the above reasons, I would reverse the trial judge's grant of judgment notwithstanding the verdict and reinstate the jury's verdict.