THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Dawn Brewer, Appellant,
 
 
 

v.

 
 
 
 Myrtle Beach Farms Company, Inc. d/b/a Myrtle Beach Pavilion and S&S Power, Inc. f/k/a Arrow Dynamics, Inc., Defendants,
 Of Whom Myrtle Beach Farms Company, Inc. d/b/a Myrtle Beach Pavilion is the 
 
 
 

Appeal From Horry County
 John L. Breeden, Jr., Circuit Court Judge

Unpublished Opinion No. 2005-UP-508
Heard June 17, 2005  Filed August 30, 2005   

AFFIRMED

 
 
 
 Sean K. Trundy, of North Charleston, and Thomas Hayden Hesse, of Summerville, for Appellant.
 Douglas M. Zayicek, of Myrtle Beach, for Respondent.
 
 
 

PER CURIAM:  Dawn Brewer appeals the trial courts order granting summary judgment to Myrtle Beach Farms Company, Inc., doing business as the Myrtle Beach Pavilion, on her claims for negligence and inadequate warnings of the dangers associated with riding its roller coaster, the Mad Mouse.  We affirm. 
FACTS
On July 31, 2000, Brewer was spending the day at Myrtle Beach Pavilion, an amusement park, while vacationing with her family when she decided to ride the Mad Mouse.  The Mad Mouse is a ten-car roller coaster designed to speed around a track with hairpin turns at approximately 30 miles per hour.  Several clearly visible signs near the entrance of the roller coaster warn that the Mad Mouse BY ITS VERY NATURE CREATES FORCES & SPEEDS THAT MAY NOT BE ACCEPTABLE TO SOME RIDERS WITH Pre-existing medical CONDITIONS and those with neck or back problems MUST NOT BOARD THE MAD MOUSE.  Although Brewer had pre-existing back problems stemming from a car accident and didnt want to get on it, she did not read or heed the warnings and boarded the roller coaster.  
Despite a sign that warned riders to SIT UP STRAIGHT WITH BACK & SHOULDERS AGAINST THE SEAT BACK WITH HEADS ERECT TO AVOID INJURY, Brewer was riding the Mad Mouse with her head leaning out of the side of the car and her eyes closed.  The Mad Mouse went around a curve on the track and came to an abrupt stop that thrust Brewer against the lap bar restraint.  Brewer waited on the stopped Mad Mouse for several minutes while Pavilion maintenance personnel inspected it.  Then the Mad Mouse started up again and completed its trip around the track.  After Brewer exited the ride, she spoke to maintenance personnel who informed her the Mad Mouse was completely controlled by a computer system, and the computers safety mechanism had likely shut down the ride because one car was traveling at a higher rate of speed than another.  
Brewer waited until the following day to see a doctor in the Myrtle Beach area who told her she had bruised ribs and gave her pain medication.  When Brewer retuned home from vacation, she saw her chiropractor who diagnosed her with compressive spinal fractures.  
On June 23, 2003, Brewer brought suit against the Pavilion and the roller coasters designer S&S Power, Inc., formerly known as Arrow Dynamic, Inc., whom she later voluntarily dismissed, for injuries she sustained while riding the Mad Mouse.  The Pavilion moved for summary judgment.  At the hearing, William Avery, a safety expert, testified the rides computers safety feature engaged because of a possible mechanical, electrical, or operational malfunction but that he could not determine which possibility caused the Mad Mouse to stop.  The trial court granted summary judgment to the Pavilion.  This appeal followed.
LAW/ANALYSIS
1.  Negligence
Brewer argues the trial court erred in granting summary judgment in favor of the Pavilion.  Brewer contends her expert presented specific facts showing there is a genuine issue for trial.  We disagree.
Summary judgment is inappropriate when facts are presented on which reasonable minds could differ.  Allen v. Long Mfg. NC, Inc., 332 S.C. 422, 428, 505 S.E.2d 354, 357 (Ct. App. 1998).  It is not enough that one create an inference which is not reasonable or an issue of fact that is not genuine.  Id. at 429, 505 S.E.2d 357-58.  The judge is not required to single out some one morsel of evidence and attach to it great significance when patently the evidence is introduced solely in a vain attempt to create an issue of fact. . . .  Main v. Corley, 281 S.C. 525, 527, 316 S.E.2d 406, 407 (1984).  
To establish a prima facie case for negligence, a plaintiff must prove the following elements: 1) a duty of care owed by the defendant to the plaintiff, 2) a breach of that duty by negligent act or omission, and 3) damage proximately caused by the breach.  Huggins v. Citibank, N.A., 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003).  South Carolina does not recognize the doctrine of res ipsa loquitur, but negligence may be proved by circumstantial or direct evidence.  Chaney v. Burgess,  246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965). Where circumstantial evidence is relied upon to establish liability, the plaintiff must show such circumstances as would justify the inference that his injuries were due to the negligent act of the defendant, and not leave the question to mere conjecture or speculation.  Id. 
Expert testimony on the question of the causal connection between a plaintiffs injuries and the acts of the defendant must satisfy the most probably rule.  Baughman v. Am. Tel. and Tel. Co., 306 S.C. 101, 111, 410 S.E.2d 537, 543 (1991).  It is not sufficient for the expert to testify that the injury might or could have resulted from the alleged cause, but the testimony must indicate the opinion represents his professional judgment as to the most likely one among the possible causes.  Id.  
Brewer contends she presented sufficient circumstantial evidence through her expert Averys testimony, to survive a summary judgment motion.  Avery testified the Mad Mouse came to a sudden stop because of an operational, mechanical, or electrical malfunction, but stated that it is not possible at this time to reverse engineer and conclude whether the breakdown was mechanical, electrical, or operational.  Avery alleged, the Pavilions failure to properly document the event prevents us from knowing exactly how [the Pavilion] acted negligently prior to the malfunction.  Avery maintained the Pavilion deviated from the standard of care by failing to document the event that caused the Mad Mouses safety feature to engage.
Averys testimony does not create a genuine issue of material fact.  It is Brewers burden to show the Pavilion was negligent in the rides computer shutting down, and nowhere does Avery allege the Pavilions actions most probably injured Brewer.  Avery opined the rides computer likely shut down because two of the cars were too close together due to an operational, mechanical, or electrical malfunction.  However, Avery never discusses why the cars may have been too close together, what maintenance or inspections would have corrected this situation, or that proper maintenance and inspections were not done by the Pavilion.  Avery presented no testimony or evidence that he spoke to Pavilion personnel regarding the incident or consulted any engineering experts. Moreover, nothing the Pavilion did or failed to do after the accident is proof of negligence before the incident.  
The Pavilion presented evidence, through the testimony of its maintenance supervisor, that Pavilion staff inspected the Mad Mouse the morning of the incident and found no problems.  Additionally, the Pavilion showed the ride shut down for safety as designed by the manufacturer.  The Pavilion also presented detailed safety inspection records showing the inspections complied with the manufacturers specifications and industry standards. Additionally, no evidence was presented to show Pavilion personnel could have caused an operational malfunction in light of the Pavilions evidence the Mad Mouse was completely operated by a computer, designed by the rides manufacturer.  Therefore, the trial court did not err in granting summary judgment to the Pavilion because Brewer presented no evidence showing the Pavilion caused any problem to the Mad Mouse or knew, or should have known, of any problem with the ride.  
2.  Warnings
Brewer argues the trial court erred in finding as a matter of law that the Pavilions warnings were adequate and that any further warnings would have been futile.  We disagree.
Neither party disputes the question of whether a roller coaster needs a warning to be safe, so the only question at issue is whether the warnings the Pavilion provided for the Mad Mouse were adequate as a matter of law.   
Generally, the question of the adequacy of the warning is one of fact for the jury as long as evidence has been presented that the warning was inadequate.  Allen v. Long Mfg. NC, Inc., 332 S.C. 422, 428, 505 S.E.2d 354, 357 (Ct. App. 1998).  A product bearing a warning that the product is safe for use if the user follows the warning is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries.  Id.  Further, a seller is not required to warn of dangers or potential dangers that are generally known and recognized.  Dema v. Shore Enters., 312 S.C. 528, 530 435 S.E.2d 875, 876 (Ct. App. 1993).  It follows, then, that a product cannot be deemed either defective or unreasonably dangerous if a danger associated with the product is one that the products users generally recognize.  Anderson v. Green Bull, Inc., 322 S.C. 268, 271, 471 S.E.2d 708, 710 (Ct. App. 1996).
Brewer presented no evidence the Pavilions warnings were inadequate.  Several signs, clearly visible to anyone boarding the roller coaster warned that the Mad Mouse:  BY ITS VERY NATURE CREATES FORCES & SPEEDS THAT MAY NOT BE ACCEPTABLE TO SOME RIDERS WITH Pre-existing medical CONDITIONS and those with neck or back problems MUST NOT BOARD THE MAD MOUSE.  Another sign warned riders to SIT UP STRAIGHT WITH BACK & SHOULDERS AGAINST THE SEAT BACK WITH HEADS ERECT TO AVOID INJURY.  Brewer testified that she watched the Mad Mouse for several minutes then decided to ride even though she didnt want to get on it and had a pre-existing back injury.  When asked at deposition whether she read or heeded the warnings, Brewer responded, no sir, I did not.  I didnt need to read the warning signs anyway.  Brewer also testified that she rode the Mad Mouse with her head leaned over the side of the car, directly contrary to the warnings.   
Additionally, Brewers experts testimony that additional warnings were needed does not create a genuine issue of material fact that the warnings were inadequate.  Avery never states what additional warnings are required, and the signs comport with the required warnings from the rides manufacturer.  The fact that the ride shut down and caused cars on the track to brake does not mean that the force created was dissimilar to the other jolts and forces normally associated with the Mad Mouse.  Brewers expert provided no evidence whatsoever that the force created by the event was different from any other force or stress created by the inherent nature of a roller coaster.  Moreover, Brewer clearly stated that further warnings would not have made a difference and would have been futile under the circumstances.  Because Brewer presented no genuine evidence the warnings were inadequate, we find no error in the trial courts finding the warnings were adequate as a matter of law.  For the reasons stated above, the order of the trial court is 
AFFIRMED.
HEARN, C.J., BEATTY, and SHORT, J.J., concur.