674 S.E.2d 500

Christal Orange MOORE and Rodney B. Stroud, individually and as Personal Representatives of the Estate of Brandon L. Stroud, Appellants,

v.

The BARONY HOUSE RESTAURANT, LLC, VanBuren W. High, Terry L. Kunkle, Charles Cannington d/b/a Town & Country Golf Carts, Carolina Auction Co., Inc., Textron Inc. d/b/a E–Z–Go Golf Cars, Joseph Wayne Thornley, and Garrett's Discount Golf Cars, LLC, Defendants,

Of Whom Textron, Inc. d/b/a E–Z–Go Golf Cars is Respondent.

No. 4480.

Court of Appeals of South Carolina.

Heard Nov. 6, 2008.
Decided Jan. 12, 2009.
Withdrawn, Substituted, and Refiled March 3, 2009.

Carl E. Pierce, II, and Joseph C. Wilson, IV, of Charleston, for Appellants.

Ian S. Ford, of Charleston, and Richard B. North, Jr., of Atlanta, Georgia, for Respondent.

KONDUROS, J.

Christal Moore and Rodney Stroud (Appellants), as representatives of the estate of Brandon Stroud (Stroud), appeal the circuit court's grant of summary judgment in favor of Textron, Inc. (Textron) on claims of strict liability and negligence related to the manufacturing and selling of certain golf cars. We affirm.

## FACTS

Dr. Terry Kunkle hosted a Christmas party in December 2004 in Berkeley County, South Carolina. Guests at the party were to have drinks and hors d'oeuvres at the residence on one part of the property, and then adjourn to dinner in a barn located across a public road, Highway 311, on another part of the property. Stroud was working for VanBuren High, who co-hosted and catered the event. Part of Stroud's responsibilities included ferrying guests from the residence to the barn via golf car. Toward that end, Kunkle and High had procured two golf cars. One was equipped with lights, and the other was not.

Daniel Causey, another staffperson for the event, testified Stroud attempted to cross the road at about 8:30 p.m. in a golf car that was not equipped with lights. According to the accident report, Stroud attempted to cut a "dogleg" from the driveway on one side of the road to the drive on the opposite side of the road approximately 180 feet down the highway. An SUV driven by Joseph Thornley was approaching from the right. Thornley testified he did not see Stroud until it was too

late to brake, turn, or otherwise react before impact. Tragically, Stroud died at the hospital later that night as a result of his injuries.

Appellants brought suit against the various parties responsible for the party, as well as the manufacturer and the distributor of the golf car Stroud was driving. With respect to Textron, Appellants alleged causes of action for strict liability based on Textron's used Fleet golf cars being unreasonably dangerous in light of their foreseeable use and based on inadequate warnings. Appellants also alleged negligence based on a failure to warn.

The golf car in this case was manufactured by Textron in 1999 and sold to a golf course in California. In 2004, Textron re-sold the car to Garrett's Discount Golf Cars, Inc., who in turn sold the car to Carolina Auction, Inc. Carolina Auction provided the golf car to Kunkle and High.

Kevin Hollerman, vice-president of sales for Textron, testified Fleet golf cars were generally designed for golf course use. Approximately seventy percent of Textron's customers leased the new Fleet golf cars as opposed to purchasing them. He further testified that when the leased golf cars were returned to Textron upon expiration of the lease, the golf cars were generally purchased by distributors for sale to the public, primarily for uses other than on golf courses.

Hollerman testified he did not know if owner's manuals were provided to distributors upon resale of the golf cars as the cars were often picked up directly from the course by the purchasing distributor. Gerald Powell, a Textron employee, testified prior to the 1990s Fleet golf cars were affixed with a dashboard label stating: "CAR IS RESTRICTED TO TWO OCCUPANTS AND OPERATION ONLY ON A GOLF COURSE BY AUTHORIZED PERSONS." In the early 1990s Textron changed the dashboard label to read: "FOR GOLF COURSE AND NON–HIGHWAY USE ONLY, AND TO BE OPERATED ONLY BY AUTHORIZED DRIVERS IN DESIGNATED AREAS."

The evidence at trial showed golf cars generally are not required under the law or any recognized safety standards to be equipped with lights or reflectors, and the operation of a golf car on a public road at night is prohibited by South Carolina law. S.C.Code Ann. § 56–3–115 (2006). Additional-

ly, testimony was presented that Textron offered after-market lighting kits that can be added to its golf cars.

The trial court granted summary judgment in Textron's favor with respect to strict liability and negligence. This appeal followed.

## STANDARD OF REVIEW

■ The appellate court "reviews the grant of a summary judgment motion under the same standard as the trial court pursuant to Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Sloan v. Dep't of Transp.*, 379 S.C. 160, 167, 666 S.E.2d 236, 239 (2008). All evidence, and inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Zurcher v. Bilton*, 379 S.C. 132, 135, 666 S.E.2d 224, 226 (2008). "However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted." *Rife v. Hitachi Constr. Mach. Ltd.*, 363 S.C. 209, 214, 609 S.E.2d 565, 568 (Ct.App.2005).

## LAW/ANALYSIS

### I. Strict Liability[1]

Appellants argue the circuit court erred in granting summary judgment in favor of Textron because they presented evidence the used golf car was defective and unreasonably dangerous as sold because Textron could foresee purchasers may misuse the golf car. We disagree.

■ In order to establish a products liability claim, a plaintiff must show (1) injury by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product was in essentially the same condition as when it left the hands of the defendant. *Rife v. Hitachi Constr. Mach. Ltd.*, 363 S.C. 209, 215, 609 S.E.2d 565, 568 (Ct.App.2005). *See* S.C.Code Ann. § 15–73–10 (2005) ("One who sells any product in a

---

1. Issues I, II, IV, and V are all related to the circuit court's conclusion Textron was entitled to judgment as a matter of law with regard to Appellants' strict liability claims.

defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property...").

■ In this instance, Appellants do not argue the golf car was defective in that it was not functioning as intended. Rather Appellants contend the golf car was defective and unreasonably dangerous to the user because Textron marketed the used Fleet golf cars for operation on public roads without affixing lights and reflective devices or without providing adequate warnings. We disagree.

■ While the mandatory addition of lights and reflectors to golf cars would no doubt add an increased element of safety, products are not defective simply because they do not have all the optional safety features that could be included. Our supreme court has said: "Most any product can be made more safe.... [A] bicycle is more safe if equipped with lights and a bell, but the fact that one is not so equipped does not create the inference that the bicycle is defective and unreasonably dangerous." *Marchant v. Mitchell Distrib. Co.*, 270 S.C. 29, 35–36, 240 S.E.2d 511, 513 (1977). Likewise, the failure to equip the golf cars with lights and reflective equipment does not create the inference the golf car was defective and unreasonably dangerous.

■ Appellants also contend the golf car was defective and unreasonably dangerous because Textron failed to provide adequate warnings regarding operation at night and on public roads. We disagree.

■ "A product may be deemed defective, although faultlessly made, if it is unreasonably dangerous to place the product in the hands of the user without a suitable warning." *Anderson v. Green Bull, Inc.*, 322 S.C. 268, 273, 471 S.E.2d 708, 712 (Ct.App.1996) (Cureton, J., concurring) (citing *Marchant v. Lorain Div. of Koehring*, 272 S.C. 243, 247, 251 S.E.2d 189, 192 (1979)). However, a product is not defective for failure to warn of an open and obvious danger. *Id.* (Cureton, J., concurring) (citing *Dema v. Shore Enters.*, 312 S.C. 528, 530, 435 S.E.2d 875, 876 (Ct.App.1993)). "[A] seller is not required to warn of dangers or potential dangers that are generally known and recognized. It follows, then, that a product cannot be deemed either defective or unreasonably

dangerous if a danger associated with the product is one that the product's users generally recognize." *Id.* at 271–72, 471 S.E.2d at 710 (citations omitted).

We agree with the circuit court's conclusion the operation of an unlighted golf car on a public highway at night presents an open and obvious risk. The risks associated with this activity seem apparent, particularly in light of other dangers found by our court to be well-known. *See id.* at 271, 471 S.E.2d at 712 (Cureton, J., concurring) ("It is common knowledge that an aluminum ladder will conduct electricity."); *Dema,* 312 S.C. at 530–31, 435 S.E.2d at 876 (finding danger of operating recreational water vehicle in proximity to swimmers was a matter of common sense precluding necessity of warning). Furthermore, Appellants' expert conceded the danger posed should have been obvious. Consequently, the golf car was not rendered unreasonably dangerous by Textron's failure to warn against nighttime operation on public roads.

## II. Negligence[2]

In this case, Appellants claim Textron was negligent in failing to adequately warn of the dangers of nighttime operation of the golf car on public roads. We disagree.

To prove a negligence claim, a plaintiff must demonstrate (1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *Platt v. CSX Transp., Inc.,* 379 S.C. 249, 258, 665 S.E.2d 631, 635 (Ct.App. 2008). "The court must determine, as a matter of law, whether the law recognizes a particular duty." *Id.*

As previously discussed, there is no duty to warn of dangers that are open and obvious. *Anderson,* 322 S.C. at 271–72, 471 S.E.2d at 710. Although questions of negligence are often for the jury, when the risk complained of is open and obvious to consumers, there is no duty to warn of that risk as a matter of law. *See Miller v. City of Camden,* 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994) (stating negligence is mixed question of law and fact with existence and scope of duty being questions of law and breach of duty being a question for the jury).

---

2. This section addresses Appellants' Issue III.

Furthermore, we believe Stroud's negligence in driving the golf car would prohibit a recovery under a negligence theory as a matter of law. *See Haley ex rel. Haley v. Brown,* 370 S.C. 240, 244 n. 6, 634 S.E.2d 62, 64 n. 6 (Ct.App.2006) ("Although we agree comparative negligence normally presents a jury question, where, after consideration of all the relevant factors, the only reasonable inference is that the plaintiff's negligence exceeded fifty percent, it becomes a matter of law for the trial court."). Therefore, we cannot conclude any genuine issue of material fact exists warranting the denial of summary judgment in Textron's favor.

## CONCLUSION

Because we believe the risk of operating an unlighted golf car at night on a public highway was open and obvious, as a matter of law, the car was not defective or unreasonably dangerous. Furthermore, because the risk was open and obvious, Textron had no duty to warn against the hazards of the conduct that lead to Stroud's accident. Therefore, the ruling of the circuit court is

**AFFIRMED.**

HEARN, C.J., and SHORT, J., concur.