20572

Pershing MARCHANT, Appellant, v. MITCHELL DISTRIBUTING COMPANY, a South Carolina Corporation and Lorain Division of Koehring, a Wisconsin Corporation, Defendants, of whom Mitchell Distributing Company is, Respondent.

(240 S. E. (2d) 511)

*James E. Gonzales,* of North Charleston, *for Appellant,*

*Donald V. Richardson, III,* and *Charles E. Carpenter, Jr.,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for Respondent,*

December 27, 1977.

LITTLEJOHN, Justice:

This action was commenced by appellant Pershing Marchant (Marchant) to recover damages for personal injuries received in a mishap involving the breaking of a cable in the operation of a crane. The crane, described as an LRT series 15H Moto-bout self-propelled hydraulic crane, was manufactured by defendant Lorain Division of KOEHRING, and was sold by a local dealer, defendant-respondent Mitchell Distributing Company (Mitchell), to Marchant's employer, Giant Portland Cement Company, for use at its Harleyville, S. C. plant.

The lower court granted a summary judgment, dismissing the local distributor, Mitchell, as a party defendant. Marchant appeals.

Our opinion deals solely with the action against Mitchell. The claim against Lorain Division of KOEHRING is not here involved.

Marchant's complaint contained three theories of liability: (1) negligence; (2) breach of express and/or implied warranties of merchantability and fitness for a particular purpose; and (3) strict liability. With respect to the cause of action for negligence, Marchant alleged that Mitchell was negligent in one or more of the following particulars: (1) in marketing, selling and/or distributing a defective crane; (2) in failing to warn of the danger of the crane double-blocking (also referred to as two-blocking); (3) in failing to equip the crane with an anti-blocking device; and (4) in selling a crane which by design, construction and lack of appropriate safety devices, was not fit for the purpose for which it was intended.

The actions alleging breach of warranty and strict liability were based on the theory that the absence of a safety attachment called an anti-blocking device rendered the crane unfit for its intended purpose, and in a defective condition unreasonably dangerous to the user. The safety device was an available option purchasable for an additional price. Marchant's employer did not purchase this item.

Mitchell's answer denied liability and contained the following allegations: (1) that the crane was not being used for its intended purpose at the time of the mishap; (2) that the individual who operated the crane at the time of the mishap was inexperienced and caused the cable to break; (3) that Marchant was contributorily negligent in numerous particulars; (4) that the use to which the crane was being put constituted misuse; (5) that there were no warranties, express or implied, made by Mitchell, and there was no privity of contract between Mitchell and Marchant; (6) that Marchant was not a "user or consumer" of the product; (7) that the crane was not designed for the use to which it was being put and such use constituted a substantial change

in its condition; (8) that the crane was not in a defective condition unreasonably dangerous to the plaintiff; and (9) that strict liability was not the law in South Carolina at the time the product was sold.

The summary judgment, in favor of Mitchell, was granted based on the following grounds: (1) that there was no actionable negligence on the part of Mitchell which was the proximate cause of any injuries sustained by Marchant; (2) that there was no duty upon Mitchell to equip or sell the crane with an anti-blocking device; and (3) that the crane was not defective. We affirm the lower court.

The basic facts which gave rise to this action are not greatly in dispute. On the afternoon of November 16, 1973, Marchant and two co-workers (Ayers and Murphy) were instructed by a plant foreman to remove some bags which had collected on a conduit. Marchant testified that the conduit was suspended approximately 15-20 feet above the ground, and the foreman told them to use the crane to accomplish this task and told Murphy to operate it. While there is some conflict in the testimony concerning Murphy's experience in operating cranes, and this particular crane, it is admitted that Murphy was not among the crane operators who had been trained by Mitchell to operate this crane.

The crane here involved is a massive, mobile piece of machinery which is equipped with an hydraulic, telescoping boom. The telescoping characteristic enables the length of the boom to be extended up to a distance of 60 feet. A steel cable, attached to a drum inside the crane, runs along sheaves up through the boom. At the end of the cable is a block which can be attached to the object to be hoisted. On the day of the mishap, the block was attached to a bucket, or basket, in which workmen can be elevated. While there is some conflict concerning the source of this particular bucket and whether it was homemade or commercially manufactured, it is admitted that the bucket was not sold by Mitchell. It is also admitted that the bucket contained no interior con-

trols which would allow the passengers to override the controls of the crane operator.

Marchant and Ayers climbed into the bucket and Murphy began manipulating the controls to raise the bucket to the conduit. In order to extend the boom and raise the bucket to the desired position, it is necessary for the operator to "play out" the cable while extending the boom. If the boom is extended to a distance greater than the length of the cable, the block will collide with the sheaves at the end of the boom. Since the block is larger than the sheaves at the boom point, great stress will be placed on the cable. This occurrence is referred to as double-blocking, or two-blocking. Although the operator of the crane can simultaneously "play out" the cable while extending the boom, Murphy chose to "play out" what he thought to be a sufficient length of cable, and then telescope the boom.

Before the bucket carrying Marchant and Ayers reached the conduit, the cable snapped, causing the bucket and workmen to fall to the ground, resulting in personal injuries. Although Murphy testified that he did not believe that the crane two-blocked, the evidence overwhelmingly forces this conclusion.

In considering whether the court was correct in granting the motion for summary judgment, we must construe all ambiguities, conclusions and inferences arising from the evidence most strongly against the moving party. *Williams v. Chesterfield Lumber Co.,* 267 S. C. 607, 230 S. E. (2d) 447 (1976). Summary judgment is properly granted under Circuit Court Rule 44(c) when there is "no genuine issue as to any material fact . . ." and the "moving party is entitled to judgment as a matter of law. . . ." *Sumter Dairies, Inc. v. Pelfrey,* S. C., 234 S. E. (2d) 490 (1977).

Keeping in mind these basic legal concepts relating to the granting of summary judgment, we have examined the entire record to determine whether there is any genuine issue of material fact for submission to a jury. As indicated herein-

above, Marchant proceeds on three possible theories: (1) negligence; (2) breach of warranty; and (3) strict liability. We conclude that the trial judge correctly granted the summary judgment motion as to Mitchell.

We discuss first the strict liability contention. The judge ruled that the crane was not defective. Section 15-73-10, Code of Laws of South Carolina (1976), was enacted in 1974, after the mishap. It reads as follows:

"§ 15-73-10. Liability of seller for defective product.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

It is apparent that this section imposes liability upon sellers of products "in a defective condition unreasonably dangerous to the user or consumer . . . ."

Marchant argues that his showing supports the inference that the crane, absent the optional safety device, was a defective product unreasonably dangerous. We think however, that the fact the crane was without the optional safety device, does not tend to prove that it was defective. Most any product can be made more safe. Automobiles would be more safe with disc brakes and steel-belted radial tires than with

ordinary brakes and ordinary tires, but this does not mean that an automobile dealer would be held to have sold a defective product merely because the most safe equipment is not installed. By a like token, a bicycle is more safe if equipped with lights and a bell, but the fact that one is not so equipped does not create the inference that the bicycle is defective and unreasonably dangerous.

The question here presented was discussed in the case of *Skyhook v. Jasper,* 90 N. M. 143, 560 P. (2d) 934 (1977), which was an action based on strict liability in tort brought against the seller-manufacturer of a crane. Plaintiff's case was based on the theory that the failure of the seller-manufacturer to equip the crane with an "insulated link" as standard equipment, rather than offering it as optional equipment, rendered the crane defective. The court said:

"[W]e are of the opinion that a failure to incorporate into a product a safety feature or device may constitute a defective condition of the product. Obviously, *the test of whether or not such a failure constitutes a defect is whether the product, absent such feature or device, is unreasonably dangerous to the user or consumer or to his property.*" at 560 P. (2d) 938. (Emphasis added.)

The court held that the trial judge correctly directed a verdict against the plaintiff.

By bringing the action under § 15-73-10, Marchant has assumed the burden of presenting evidence which tends to prove that the crane was in a defective condition unreasonably dangerous, which proximately caused his injury. The fact that the injury occurred and the fact that the crane could have been more safe is not sufficient to support a finding that the crane was unreasonably dangerous. There is, of course, some danger incident to the use of most any product. Any product can certainly cause injury if used improperly. No doubt there are products which require safety devices to eliminate dangers. This is simply not one of them.

We have held that the judge properly ruled that the crane was not in a defective condition unreasonably dangerous.

We also hold that there is no evidence of breach of warranty. The crane did not fail or malfunction. It was merchantable and fit for the purpose for which it was sold.

> We also agree that Marchant has not submitted to the court evidence that warrants the inference that Mitchell was negligent. It is beyond question that

Mitchell had nothing to do with designing or assembling the crane. Accordingly, Mitchell may not be held liable on the theory of negligent design. Hursch and Bailey, American Law of Products Liability 2d, § 9:13 (1974). The ordinary dangers incident to the operation of a crane are well known. Assuming, without so deciding, that there was an obligation on the part of Mitchell, the distributor, to give warnings about the operation of the crane, the same would have been inconsequential. Murphy, the operator, admitted that he was aware of the dangers.

Other employees had been trained to operate this crane, but Murphy had not. At the same time, he was not inexperienced in operating this type of equipment and was well aware that extending the boom without extending the cable would cause it to break. He testified, in response to defense counsel's question, as follows:

"Q. And you know that if you extend the boom faster than you play out the line, you can snap the cable.

"A. Well aware of that.

"Q. All right, sir, while you had just had what I'm going to call on-the-job training—I guess there are several ways one can get training; one is on the job and one is formal sessions and actually be taught how to do it. Just accept those two definitions if you will. Having had on-the-job training and having operated the cranes that you have and having been around heavy equipment, were you aware of the danger in extending your boom without playing out that hoist line, that you'd snap the cable?

"A. Positively.

"Q. You knew to watch for that. Is that correct?

"A. Yes, sir."

Since we conclude that the plaintiff is not entitled to recover against Mitchell on the theory of strict liability, we do not reach the question of whether the statute is retroactive.

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.