813 F.2d 404
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Patricia WADDELL, Appellee,
v.
LULL ENGINEERING COMPANY, INC., Appellant.
 No. 86-1505.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 8, 1986.
Decided Feb. 20, 1987.
 
 Before ERVIN, CHAPMAN and WILKINS, Circuit Judges.
 Ronald E. Boston (Turner, Padget, Graham & Laney; Robert J. Sheheen, Savage, Royall, Kenard & Sheheen; on brief), for appellant.
 John L. Weaver (Yarborough, Lewis, Weaver & Stewart, on brief), for appellee.
 WILKINS, Circuit Judge:
 
 
 1
 Lull Engineering Company, Inc. (Lull) appeals a jury verdict rendered in favor of Patricia Waddell on her strict liability cause of action. The two issues presented on appeal are whether the evidence was sufficient to support the jury's finding of liability and whether the charge to the jury accurately set forth the law. The amount of the verdict is not contested.
 
 
 2
 We find the evidence to have been sufficient and the charge adequate.
 
 I.
 
 3
 On August 27, 1983, Waddell was working for a building cleaning service in Myrtle Beach, South Carolina. She was assigned to clean exterior windows at the Arcadian Dunes Condominiums, which were then still under construction. On this occasion another individual, Wallace Doyle, was assisting her in this work. They were met at the site by David Hardee, an equipment operator employed by the general contractor on the construction project. Hardee was to operate a Lull Rough Terrain Forklift Model 644 (644) and raise Waddell and Doyle to the windows to be cleaned.
 
 
 4
 The Lull 644 consists of a main frame, an operator's compartment, and a lifting mechanism or boom mounted on a movable carriage. It is propelled by four large tractor tires. The unique feature of the Lull design is the carriage which travels along the main frame. This sliding carriage allows a load to be transferred a total of six feet forward or backward without engaging the drivetrain and moving the entire vehicle. The boom, mounted on the carriage, telescopes in and out and may be raised and lowered.
 
 
 5
 The Lull 644 also features frame leveling. Frame leveling allows the operator to tilt the main frame of the vehicle up to twelve degrees to the left or right to compensate for uneven terrain. This ensures that the boom will be vertical when raised. Therefore, Hardee could drive to each building, level the frame, and move Waddell and Doyle up, down, forward and backward without actually driving the vehicle forward or backward.
 
 
 6
 On the morning of the accident, Hardee, Waddell and Doyle worked two hours without incident. Hardee would adjust the platform position as directed from above by Waddell or Doyle. When a vertical line of windows was completed, Hardee would lower the platform and drive to the next section. At the time of the accident Hardee had just raised Waddell and Doyle to the top floor windows, approximately 30 feet above the ground. Hardee testified he set the handbrake and left the vehicle to get a drink of water. As he walked away he glanced around and saw the vehicle begin to roll backward. He ran toward it but was unable to arrive in time to prevent the accident. It rolled four or five feet, landing on its side, throwing Waddell and Doyle to the ground. Waddell suffered serious permanent injuries, and Lull has not argued that the verdict was excessive.
 
 II.
 
 7
 South Carolina law provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer."[1] S.C.CODE ANN. Sec. 15-73-10(1) (Law.Co-op.1977). The jury verdict in favor of Waddell was necessarily predicated upon a factual finding that the equipment was in a defective condition unreasonably dangerous to the user. This finding may be set aside "only where the evidence, viewed in the light most favorable to the parties supporting the jury's verdict, is so clear that reasonable persons could reach no other conclusion than that asserted on appeal." McElveen v. County of Prince William, 725 F.2d 954, 958 (4th Cir.), cert. denied, 469 U.S. 819 (1984).
 
 
 8
 Lull's director of engineering testified the 644 is designed primarily as a materials handler, but admitted that Lull is aware that operators use it to lift other workers. The evidence showed that at one time Lull offered a workers' platform as optional equipment for the 644. Waddell's experts testified to three design features that should have been incorporated into the 644 for the forklift not be considered unreasonably dangerous, particularly if used for lifting personnel: stabilizers, additional brakes and additional warnings. It is necessary to address only the issue of stabilizers in order to affirm the verdict.
 
 
 9
 Lull offered stabilizers, or outriggers, as an option on the 644. Sherman Frederick, formerly the director of engineering for Lull, explained to the jury that the unique transfer carriage is located high on the vehicle, thereby raising the center of gravity and making it more sensitive to roll-over than other vehicles without such a carriage. He further stated stabilizers were "absolutely, I consider almost mandatory for the needs of operators and the safety required for operators on the platform." Daniel Pacheco, also an expert witness for Waddell, likewise testified "I think they [stabilizers] absolutely should have been standard on this machine."
 
 
 10
 Lull presented testimony from its current director of engineering, David Truehart, that the 644 was tested and met the criteria of the American National Standards Institute without stabilizers. However, further examination revealed that the testing Truehart referred to consisted solely of some photographs taken before he was employed and about which he knew very little. Truehart further admitted that the tip values determined through testing should have been documented, but he could produce no written documentation. Frederick, formerly of Lull, had previously testified Lull failed to adequately test designs for safety prior to introducing them in the marketplace.
 
 
 11
 The expert testimony produced by Waddell brings this case within the principles delineated in Marchant v. Lorain Division of Koehring, 272 S.C. 243, 251 S.E.2d 189 (1979). In Marchant, plaintiff was injured when the crane which was lifting him "double blocked." Double-blocking occurs when the boom is extended farther than the length of available cable, thereby stretching and breaking the cable. The manufacturer offered an optional safety device to prevent this from happening.
 
 
 12
 The South Carolina Supreme Court stated "a failure to incorporate into a product a safety feature or device may constitute a defective condition of the product." Marchant, 272 S.C. at 247, 251 S.E.2d at 191 (quoting Marchant v. Mitchell Distributing Co., 270 S.C. 29, 240 S.E.2d 511 (1977)). The court held that once competent evidence is adduced indicating the machine is unreasonably dangerous absent the safety device, a question is created for the jury.
 
 
 13
 There was conflicting testimony regarding whether the 644 was unreasonably dangerous absent stabilizers. The jury, in returning a verdict for Waddell, found that the lack of stabilizers did render the 644 unreasonably dangerous. Since reasonable persons could have arrived at this conclusion with the evidence presented, the verdict should not be disturbed. McElveen v. County of Prince William, 725 F.2d at 958.
 
 
 14
 Lull's related argument that the evidence was insufficient to support the verdict because the experts never testified that the 644 was "unreasonably dangerous" is also rejected. Expert testimony was produced describing stabilizers as "absolutely required" for the safety of operators and workers. Upholding this verdict based on this testimony does not contravene the well established principle that a manufacturer is not an insurer of his product and a product is not defective and unreasonably dangerous merely because it can be made safer. The experts, while not using the exact statutory language, went beyond the realm of mere safety options and described design features essential for the safety of workers. The testimony was sufficient to submit the case to the jury to resolve the question of whether the 644 was unreasonably dangerous.
 
 III.
 
 15
 Lull's second contention is that the trial judge erred in charging the jury. Lull's claim finds its roots in the following statement: "I think you're going to find that they're interchangeable, that defective means unreasonably dangerous, and that defective means defective and unreasonably dangerous." Lull asserts the failure to separately charge the elements of defective and unreasonably dangerous allowed the jury to find for Waddell merely upon a showing that an optional safety device would have rendered the 644 better or safer.
 
 
 16
 In reviewing a charge, it is improper to consider a single word or sentence in isolation to determine its adequacy. Honea v. West Virginia Pulp and Paper Co., 380 F.2d 704, 709 (4th Cir.1967). Rather, the entire charge should be considered as a whole to determine if the instructions fairly and adequately set forth the pertinent legal principles. Chavis v. Finnlines, Ltd., O/Y, 576 F.2d 1072, 1076 (4th Cir.1978).
 
 
 17
 While the trial judge could have properly charged the terms were related or intertwined, any error in using the word "interchangeable" was cured by the subsequent instructions. The jury was told "[a] product is in a defective condition if it is unreasonable [sic] dangerous to its user under the conditions and circumstances that foreseeably accompany its use." This language is virtually identical to that used by the South Carolina Supreme Court in Kennedy v. Custom Ice Equipment Co., Inc., 271 S.C. 171, 176, 246 S.E.2d 176, 178 (1978) and was repeated several times by the trial judge. Moreover, the jury was properly instructed that a product is not defective and unreasonably dangerous merely because it can be made safer.
 
 
 18
 Accordingly, we find that the charge, when considered in its entirety, fairly and adequately set forth the controlling legal principles.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The statute also requires that the seller be engaged in the business of selling such a product and the product must reach the user or consumer without substantial change to the condition in which it was sold. It is undisputed that these elements were satisfied in the instant case