609 S.E.2d 565

**Richard RIFE, Appellant,**

v.

**HITACHI CONSTRUCTION MACHINERY CO., LTD.,** Euclid–Hitachi Heavy Equipment, Ltd., Deere–Hitachi Construction Machinery Corporation, Hitachi Construction Machinery (America) Corporation, American Equipment Company, and Does 1–5 Inclusive, Defendants, of whom Hitachi Construction Machinery Co., Ltd. and American Equipment Company are Respondents.

No. 3936.

Court of Appeals of South Carolina.

Heard Jan. 11, 2005.

Decided Jan. 31, 2005.

Rehearing Denied March 18, 2005.

William Stuart Duncan, of Georgetown, for Appellant.

N. Ward Lambert, of Greenville, for Respondent, American Equipment Company, Inc.

J. Calhoun Watson, of Columbia, for Respondent, Hitachi Construction Machinery Co., Ltd.

ANDERSON, J.

In this products liability case, Richard Rife appeals the trial court's orders granting summary judgment to Hitachi Construction Machinery Co., Ltd. (Hitachi) and American Equipment Company (American Equipment). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On June 25, 1999, Rife sustained an injury while operating a 1992 Hitachi EX100 Excavator (EX100). When Rife pushed the controls of the excavator to drive off an embankment, the EX100 suddenly lurched forward and then abruptly stopped. The sudden stop ejected Rife through the front window of the operator's cab, injuring him.

When the accident occurred, Rife worked for Armand Berube d/b/a Dirty Works, Inc., a grading contractor. In March of 1998, Dirty Works purchased the used EX100 from American Equipment as-is. Berube knew the excavator was a "gray market" machine. Machinery sold on the "gray market" consists of equipment designed, manufactured, and marketed for use in a foreign country, but which is imported into the United States. Hitachi designed and manufactured the EX100 at issue solely for sale and use in Japan according to Japanese specifications that differ significantly from American specifications. Hitachi sold the EX100 in Japan to a Japanese purchaser for use in Japan. The EX100 was never intended for use in the United States.

At the time of the accident, the EX100 had no seat belt. When Hitachi manufactured the EX100, a seat belt was an

available option in accordance with the Japanese safety standards.

Rife filed this action against Hitachi and American Equipment alleging (1) negligence; (2) strict liability based on a manufacturing defect; and (3) strict liability based on a failure to warn of the defect. After answering, Hitachi and American Equipment filed motions for summary judgment. The trial court granted both motions.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 601 S.E.2d 342 (2004); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 603 S.E.2d 629 (Ct.App.2004); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud*, 360 S.C. 615, 602 S.E.2d 747 (2004); *McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998). If triable issues exist, those issues must go to the jury. *Baril v. Aiken Reg'l Med. Ctrs.*, 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Belton v. Cincinnati Ins. Co.*, 360 S.C. 575, 602 S.E.2d 389 (2004); *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004); Rule 56(c), SCRCP; *see also Higgins v. Medical Univ. of South Carolina*, 326 S.C. 592, 486 S.E.2d 269 (Ct.App.1997) (noting that when ruling on a motion for summary judgment, the trial judge must consider all of the

documents and evidence within the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits). "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002); *see also Schmidt v. Courtney,* 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 534 S.E.2d 688 (2000); *Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000); *Ellis v. Davidson,* 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997).

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *McCall,* 359 S.C. at 376, 597 S.E.2d at 183. Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Ellis,* 358 S.C. at 518–19, 595 S.E.2d at 822; *Peterson v. West American Ins. Co.,* 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999); Rule 56(c), SCRCP.

The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields,* 354 S.C. 58, 580 S.E.2d 433 (2003); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins,* 358 S.C. at 289, 594 S.E.2d at 561–62; *Murray v. Holnam, Inc.,* 344 S.C. 129, 542 S.E.2d 743 (Ct.App.2001).

## *LAW/ANALYSIS*

### I. Doctrinal Analysis/Products Liability

 A products liability case may be brought under several theories, including negligence, strict liability, and warranty. *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 494 S.E.2d 835 (Ct.App.1997); *Bragg v. Hi–Ranger, Inc.,* 319 S.C. 531, 462 S.E.2d 321 (Ct.App.1995). In a products liability action, regardless of the theory on which the plaintiff seeks recovery, he must establish three elements: (1) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant. *Small,* 329 S.C. at 462–63, 494 S.E.2d at 842; *Bragg,* 319 S.C. at 539, 462 S.E.2d at 326; *see also* S.C.Code Ann. 15–73–10(1) (1977) ("One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property . . . ."). Further, liability for negligence requires, in addition to the above, proof that the manufacturer breached its duty to exercise reasonable care to adopt a safe design. *Allen v. Long Mfg. NC, Inc.,* 332 S.C. 422, 505 S.E.2d 354 (Ct.App.1998); *Madden v. Cox,* 284 S.C. 574, 328 S.E.2d 108 (Ct.App.1985).

 Under any products liability theory, a plaintiff must prove the product defect was the proximate cause of the injury sustained. *Bray v. Marathon Corp.,* 356 S.C. 111, 588 S.E.2d 93 (2003); *Small,* 329 S.C. at 463, 494 S.E.2d at 842; *see also*

*Livingston v. Noland Corp.*, 293 S.C. 521, 362 S.E.2d 16 (1987) (finding proximate cause is an element of strict liability claim); *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671 (1978) (holding proximate cause is an essential element common to the alternative theories of negligence, breach of implied warranty, and strict liability in tort); S.C.Code Ann. 36–2–715(2)(b) (2003) (providing that consequential damages resulting from seller's breach include injury to person or property proximately resulting from any breach of warranty).

A plaintiff suing under a products liability cause of action can recover all damages that were proximately caused by the defendant's placing an unreasonably dangerous product into the stream of commerce. *Small*, 329 S.C. at 464, 494 S.E.2d at 843; *Parr v. Gaines*, 309 S.C. 477, 424 S.E.2d 515 (Ct.App.1992). Proximate cause requires proof of causation in fact and legal cause. *Bray*, 356 S.C. at 116–17, 588 S.E.2d at 95; *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001). Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. *Small*, 329 S.C. at 463, 494 S.E.2d at 842. Legal cause is proved by establishing foreseeability. *Bray*, 356 S.C. at 117, 588 S.E.2d at 95; *Small*, 329 S.C. at 463, 494 S.E.2d at 842.

The touchstone of proximate cause in South Carolina is foreseeability. *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994); *Small*, 329 S.C. at 463, 494 S.E.2d at 842. The test of foreseeability is whether some injury to another is the natural and probable consequence of the complained-of act. *Id.* For an act to be a proximate cause of the injury, the injury must be a foreseeable consequence of the act. *Small*, 329 S.C. at 463, 494 S.E.2d at 842–43. Although foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, the plaintiff need not prove that the actor should have contemplated the particular event which occurred. *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E.2d 251 (1991); *Sims v. Hall*, 357 S.C. 288, 592 S.E.2d 315 (Ct.App.2003).

Proximate cause is the efficient or direct cause of an injury. *Small*, 329 S.C. at 464, 494 S.E.2d at 843. Proximate cause does not mean the sole cause. *Bishop v. South*

*Carolina Dep't of Mental Health,* 331 S.C. 79, 502 S.E.2d 78 (1998); *Small,* 329 S.C. at 464, 494 S.E.2d at 843. The defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury. *Sims,* 357 S.C. at 299, 592 S.E.2d at 320; *Small,* 329 S.C. at 464, 494 S.E.2d at 843.

█ An intervening force may be a superseding cause that relieves an actor from liability. *Small,* 329 S.C. at 467, 494 S.E.2d at 844. However, the intervening cause must be a cause that could not have been reasonably foreseen or anticipated. *Mickle v. Blackmon,* 252 S.C. 202, 166 S.E.2d 173 (1969); *Small,* 329 S.C. at 467, 494 S.E.2d at 844.

## II. Summary Judgment—Hitachi Construction Machinery Co., Ltd.

█ Rife argues the judge erred in granting summary judgment to Hitachi. We disagree.

The trial court granted summary judgment to Hitachi on the ground that Rife's injuries were not the foreseeable consequences of Hitachi's failure to equip the EX100 with a seat belt because it was designed and manufactured solely for distribution and use in Japan.

Uncontroverted testimony indicated Hitachi intended the EX100 only for the Japanese market, sold the EX100 to a Japanese customer, and manufactured the EX100 in accordance with Japanese safety standards. The EX100 was not constructed according to United States standards and was never intended for sale in the United States. Some third party imported the EX100 into the United States and sold it on the "gray market." *Black's Law Dictionary* defines "gray market" as a "market in which the seller uses legal but sometimes unethical methods to avoid a manufacturer's distribution chain and thereby sell goods (esp. imported goods) at prices lower than those envisioned by the manufacturer." *Black's Law Dictionary* 989 (8th ed.2004). "Gray market" products include " 'goods produced abroad with authorization and payment but which are imported into unauthorized markets.' " *Black's Law Dictionary* 989 (quoting Ralph H. Folsom Michael W. Gordon, *International Business Transactions* 20.8 (1995)).

There is no evidence regarding how many people owned the EX100 prior to its purchase by Dirty Works or whether anyone altered the EX100 in any way. Under these facts, Hitachi could not reasonably foresee the EX100, designed for use in Japan, would injure a person in the United States. Any foreseeability link was severed when the EX100 was imported into the United States. Therefore, as a matter of law, Hitachi is not liable for Rife's injuries.

### III. Summary Judgment—American Equipment Company

Rife contends the judge erred in granting summary judgment to American Equipment on Rife's theories of liability: strict liability, negligent design and manufacture, and failure to warn of a defect. We disagree.

■ The trial court based its decision to grant summary judgment to American Equipment on the holding of the factually similar case, *Marchant v. Mitchell Distrib. Co.*, 270 S.C. 29, 240 S.E.2d 511 (1977). In *Marchant,* the plaintiff sustained an injury when a cable snapped, causing a bucket connected to a hydraulic crane's telescoping boom to fall. The plaintiff brought an action against Mitchell Distributing, the equipment distributor who sold the crane to the plaintiff's employer, alleging negligence, breach of express and/or implied warranties of merchantability and fitness for a particular purpose, and strict liability. The actions averring breach of warranty and strict liability were based on the theory that the absence of a safety attachment called an anti-blocking device rendered the crane unfit for its intended purpose and in a defective condition unreasonably dangerous to the user. *Id.* at 32, 240 S.E.2d at 511–12. The safety device was an available option purchasable for an additional price. The plaintiff's employer did not purchase the device. *Id.*

In concluding the trial court correctly granted the summary judgment motion as to Mitchell Distributing, the *Marchant* court explained:

> Marchant argues that his showing supports the inference that the crane, absent the optional safety device, was a defective product unreasonably dangerous. We think however, that the fact the crane was without the optional safety

device, does not tend to prove that it was defective. Most any product can be made more safe. Automobiles would be more safe with disc brakes and steel-belted radial tires than with ordinary brakes and ordinary tires, but this does not mean that an automobile dealer would be held to have sold a defective product merely because the most safe equipment is not installed. By a like token, a bicycle is more safe if equipped with lights and a bell, but the fact that one is not so equipped does not create the inference that the bicycle is defective and unreasonably dangerous.

*Id.* at 35–36, 240 S.E.2d at 513. The court further articulated:

By bringing the action under section 15–73–10, Marchant has assumed the burden of presenting evidence which tends to prove that the crane was in a defective condition unreasonably dangerous, which proximately caused his injury. The fact that the injury occurred and the fact that the crane could have been more safe is not sufficient to support a finding that the crane was unreasonably dangerous.

*Id.* at 36, 240 S.E.2d at 514.

Rife asserts American Equipment marketed and sold the EX100 in an unreasonably dangerous condition because it lacked an optional safety device, a seat belt. Applying *Marchant,* we find Rife failed to present any evidence demonstrating the EX100 was unreasonably dangerous. Evidence the EX100 could have been made more safe with the installation of a seat belt is insufficient to support a finding the EX100 was defective. There is some danger incident to the use of most any product. A product can certainly cause injury if used improperly. No doubt there are products which require safety devices to eliminate dangers. This is not one of them.

■ In addition, we rule the trial court correctly held there was no evidence upon which a jury could conclude American Equipment was negligent in the design or manufacture of the EX100. In *Marchant,* the plaintiff alleged Mitchell Distributing was negligent in marketing, selling, and/or distributing a defective crane. In upholding summary judgment in favor of Mitchell Distributing, the court declared: "It is beyond question that Mitchell had nothing to do with designing or assembling the crane." *Id.* at 37, 240 S.E.2d at 514. The court in *Marchant* determined Mitchell could not be liable

on the theory of negligent design. *Id.* Similarly, American Equipment had no involvement in the design or manufacture of the EX100. Factually, American Equipment did not have any input regarding whether a seat belt was installed. Rife knew the EX100 did not have a seat belt prior to the accident. *See Marchant*, 270 S.C. at 37, 240 S.E.2d at 514 (stating that failure to give warnings was inconsequential where plaintiff admitted he knew the dangers prior to the accident at issue). In his deposition, Rife answered counsel's questions:

> Q. And between that point in time, the time of the meeting, and the day your accident occurred, between the two, did you have occasion to operate this EX–100 track hoe?
>
> A. Yes
>
> Q. Okay. And did you notice then that it did not have a seat belt?
>
> A. Yes.

The trial court did not err in granting summary judgment to American Equipment on all causes of action.

## CONCLUSION

Rife's injuries were not the foreseeable consequences of Hitachi's failure to equip the EX100 with a seat belt because it was designed and manufactured in compliance with Japanese standards solely for use in Japan. Hitachi could not reasonably foresee the EX100 would injure a user in a foreign market. Any foreseeability link or concatenation was severed when the EX100 was imported into the United States. Furthermore, the exclusion of the seat belt on the EX100 was **NOT** the proximate cause of Rife's injuries.

The absence of a seat belt does not factually or legally prove the EX100 was unreasonably dangerous. Concomitantly, the seller, American Equipment, is not liable under any products liability theory. Finally, American Equipment, a seller with absolutely no involvement in the design or manufacture of the EX100, cannot be held liable for a design or manufacturing defect.

Accordingly, the orders of the trial court granting summary judgment to Hitachi and American Equipment are

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.