THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Village West Horizontal Property Regime, Respondent,
 
 
 

v.

 
 
 
 Kenneth C. Arata and Madeleine R. Aratan, Appellants.
 
 
 

Appeal From Beaufort County
 Jackson V. Gregory, Circuit Court Judge

Unpublished Opinion No. 2007-UP-015
Submitted January 1, 2007  Filed January 11, 2007

AFFIRMED

 
 
 
 Jack D. Simrill, of Hilton Head Island, for Appellants.
 Edward E. Bullard and Sonja N. Friedman, of Hilton Head Island, for Respondent.
 
 
 

PER CURIAM:  In this lien foreclosure action, Kenneth C. and Madeleine R. Arata (the Aratas) appeal the circuit courts order granting Village West Horizontal Property Regime (Regime) summary judgment.  We affirm.[1]
FACTS
The Aratas own Unit 6 in Phase 3 of the Village West Horizontal Property Regime.  Unit 6 is located in the Spinnaker building, one of five buildings within the Regime.  In March 2005, the Regime filed a complaint against the Aratas for failure to pay an assessment.  In addition, the Regime filed a lis pendens against Unit 6. 
On March 21, 2005, the Regime filed an amended complaint, asserting a lien against Unit 6 and asking the circuit court to foreclose on the lien.  The Aratas answered, admitting they did not pay the assessment.  However, they averred the Regimes By-Laws prevented the Regime from collecting the assessment.  Furthermore, the Aratas counterclaimed for slander of title.  Subsequently, the Aratas moved to amend their answer to assert a counterclaim for an accounting of settlement proceeds from a lawsuit involving construction defects in the Spinnaker building.[2]  
The Regime moved for summary judgment, attaching a memorandum and several exhibits.  The Regime explained it initiated two lawsuits from 1994 to 1997.  The first suit involved construction-related defects in the Spinnaker building.  This lawsuit settled for $300,000.  The second lawsuit involved construction-related defects in the other four buildings within the Regime.  The second lawsuit settled for $7 million.[3]  
According to the Regime, the total recovery from these suits did not cover the entire expense of repairing the buildings.  As a result, the Regimes board assessed all of the unit owners according to their percentage of ownership in the Regime.  The Aratas refused to pay this assessment.  After the Regime filed the present foreclosure action, the Aratas sought a temporary injunction to stop the Regimes repair of the buildings.  This request was denied.  
The Aratas filed a motion in opposition to summary judgment.  They argued the second lawsuit, relating to defects in all of the Regimes buildings except the Spinnaker building, resulted in a deficiency.  Consequently, the Aratas contended, the Regime improperly levied the assessment to cover the deficiency as to those buildings only.  Furthermore, they reiterated their position that the Regimes By-Laws prohibited such an assessment. 
After a hearing, the circuit court granted summary judgment to the Regime and ordered foreclosure of the lien.  The Aratas moved for reconsideration, which the circuit court denied.  This appeal followed.
STANDARD OF REVIEW
When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the circuit court under Rule 56(c), SCRCP: summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  David v. McLeod Regl Med. Ctr., 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006); Bennett v. Investors Title Ins. Co., 370 S.C. 578, ___, 635 S.E.2d 649, 654-55 (Ct. App. 2006).  In determining whether any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. Law v. S.C. Dept of Corrs., 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006); Wells v. City of Lynchburg, 331 S.C. 296, 302, 501 S.E.2d 746, 749 (Ct. App. 1998).  If triable issues exist, those issues must go the jury. Mulherin-Howell v. Cobb, 362 S.C. 588, 595, 608 S.E.2d 587, 591 (Ct. App. 2005).  
Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; Law, 368 S.C. at 434, 629 S.E.2d at 648; BPS, Inc. v. Worthy, 362 S.C. 319, 325, 608 S.E.2d 155, 159 (Ct. App. 2005).  On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. Sloan v. Friends of Hunley, Inc., 369 S.C. 20, 25, 630 S.E.2d 474, 477 (2006); see also Schmidt v. Courtney, 357 S.C. 310, 317, 592 S.E.2d 326, 330 (Ct. App. 2003) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed strongly against the moving party).
When further inquiry into the facts of the case is desirable to clarify application of the law, summary judgment is not appropriate.  Gadson v. Hembree, 364 S.C. 316, 320, 613 S.E.2d 533, 535 (2005); Miller v. Blumenthal Mills, Inc., 365 S.C. 204, 220, 616 S.E.2d 722, 729 (Ct. App. 2005).  Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied.  Nelson v. Charleston County Parks & Recreation Commn, 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct. App. 2004).  However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted.  Rife v. Hitachi Constr. Mach. Co., Ltd., 363 S.C. 209, 214, 609 S.E.2d 565, 568 (Ct. App. 2005); Ellis v. Davidson, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct. App. 2004).
The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact.  Jones v. State Farm Mut. Auto. Ins. Co., 364 S.C. 222, 228, 612 S.E.2d 719, 722 (Ct. App. 2005).  The moving party may discharge the burden of demonstrating the absence of a genuine issue of material fact by pointing out the absence of evidence to support the nonmoving partys case.  Lanham v. Blue Cross & Blue Shield of S.C., Inc., 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002).  Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponents case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings.  Bennett v. Investors Title Ins. Co., 370 S.C. 561, ___, 635 S.E.2d 660, 665 (Ct. App. 2006).  Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial.  Rife, 363 S.C. at 214, 609 S.E.2d at 568.
The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder.  Dawkins v. Fields, 354 S.C. 58, 69, 580 S.E.2d 433, 438 (2003); Rumpf v. Massachusetts Mut. Life Ins. Co., 357 S.C. 386, 393, 593 S.E.2d 183, 186 (Ct. App. 2004).  Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues.  Helena Chem. Co. v. Allianz Underwriters Ins. Co., 357 S.C. 631, 644, 594 S.E.2d 455, 462 (2004); B & B Liquors, Inc. v. ONeil, 361 S.C. 267, 270, 603 S.E.2d 629, 631 (Ct. App. 2004).
DISCUSSION
I. The By-Laws
The Aratas contend the circuit court erred in holding that the Regimes By-Laws did not prohibit the assessment.  Alternatively, they maintain the By-Laws are ambiguous.  In response, the Regime argues both the By-Laws and statutory authority compel the construction defects be repaired through a pro rata assessment.  We agree with the Regime.
The operative documents that govern a horizontal property regime constitute a contract between the association and its individual members.  Swanson v. Parkway Estates Townhouse Assn, 567 N.W.2d 767, 768 (Minn. App. 1997); see also Reyhani v. Stone Creek Cove Condo. II Horizl Prop. Regime, 329 S.C. 206, 211-13, 494 S.E.2d 465, 468-69 (Ct. App. 1997) (applying principles of contract law to interpret the operative documents of a horizontal property regime); Houck v. Rivers, 316 S.C. 414, 416, 450 S.E.2d 106, 108 (Ct. App. 1994) (interpreting provisions of a master deed using contract law).  The interpretation of a clear and unambiguous agreement is a question of law for the court.  Pearson v. Church of God, 325 S.C. 45, 54, 478 S.E.2d 849, 853 (1996); Stribling v. Stribling, 369 S.C. 400, ___, 632 S.E.2d 291, 293 (Ct. App. 2006).
In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties.  D.A. Davis Constr. Co., Inc. v. Palmetto Props., Inc., 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984); Ellie, Inc. v. Miccichi, 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct. App. 2004); see also Brady v. Brady, 222 S.C. 242, 246, 72 S.E.2d 193, 195 (1952) (Agreements should be liberally construed so as to give them effect and carry out the intention of the parties.).  The parties intention should first be determined from the language of the contract.  Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003); Gilbert v. Miller, 356 S.C. 25, 30, 586 S.E.2d 861, 864 (Ct. App. 2003); Goode v. St. Stephens United Methodist Church, 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct. App. 1997); see also Bruce v. Blalock, 241 S.C. 155, 161, 127 S.E.2d 439, 442 (1962) (It is axiomatic that the intent and purport of a written contract or agreement has to be gathered from the contents of the entire agreement and not from any particular clause or provision thereof.).
In general, if the contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense.  Ingram v. Kaseys Assocs., 340 S.C. 98, 110, 531 S.E.2d 287, 293 (2000); Jordan v. Sec. Group, Inc., 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993); see also Superior Auto. Ins. Co. v. Maners, 261 S.C. 257, 263, 199 S.E.2d 719, 722 (1973) ([T]o ascertain the intention of an instrument resort is first to be had to its language, and if such is perfectly plain and capable of legal construction, such language determines the force and effect of the instrument.).  When an agreement is clear and capable of legal interpretation, the courts only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it.  Heins v. Heins, 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct. App. 2001).  The court must enforce an unambiguous contract according to its terms, regardless of the contracts wisdom or folly, or the parties failure to guard their rights carefully.  McPherson v. J. E. Sirrine & Co., 206 S.C. 183, 206, 33 S.E.2d 501, 510 (1945); Ellie, 358 S.C. at 93-94, 594 S.E.2d at 493.
Article IX of the Regimes By-Laws provides, in pertinent part:
ARTICLE IX
RECONSTRUCTION AND REPAIR

 
 In the event of casualty loss or damage to the Property, the [Regimes] Board of Directors shall be responsible for applying the proceeds of all casualty insurance to the repair or reconstruction of the Property in accordance with the provisions of this ARTICLE IX.  Reconstruction or repair shall be mandatory unless two-thirds or more of the Property is destroyed or substantially damaged.  If two-thirds or more of the Property is destroyed or substantially damaged, reconstruction shall not be mandatory . . . . If less than two-thirds of the Property is destroyed or substantially damaged, then such Property shall be repaired in the following manner:
 . . . 
 (3) If the insurance proceeds paid to the Board are insufficient to cover the cost of reconstruction, the deficiency shall be paid as a special assessment by the Unit Owners whose units are being reconstructed or repaired in proportion to the damage done to their respective Units.
 (4) The insurance proceeds received by the Board . . . and any special assessments collected to cover a deficiency in insurance shall constitute a construction fund from which the Board . . . shall disburse payment of the costs of reconstruction and repair.  The first disbursements from the construction fund shall be insurance proceeds; and if there is a balance in the fund after payment of all costs of reconstruction and repair, it shall be distributed to the Unit Owners who paid special assessments in proportion to their payments.  Any balance remaining after such distribution shall be retained by the Association.
 

Moreover, Article X of the Regimes By-Laws reads, in relevant part:
ARTICLE X
INSURANCE TRUST

 
 In the event of casualty loss to the Property, all insurance proceeds indemnifying the loss or damage shall be paid jointly to the Board of Directors as Insurance Trustee . . . . The Board of Directors, acting as Insurance Trustee, shall receive and hold all insurance proceeds in trust for the purposes stated in this ARTICLE X, and for the benefit of the Association, the Unit Owners, and their respective mortgagees in the following share:
 . . . 
 (2) Insurance proceeds paid on account of loss or damage to less than all of the Units, when the damage is restored, shall be held for the benefit of Unit Owners of the damaged Units . . . in proportion to the costs of repairing each damaged unit.
 

The Aratas argue these provisions provide the proper procedures to collect and use funds obtained from the above-referenced lawsuits.  Moreover, they assert the Regime could not assess unit owners in the Spinnaker building to pay for reconstruction and repair costs with respect to the other buildings in the Regime.  To support their argument, they specifically reference Article IXs language referring to casualty loss or damage to the Property and the fact that the adjective casualty is omitted from later references to loss and insurance within Article IX.
Initially, we hold Articles IX and X of the Regimes By-Laws have no application to the present case.  A contract is read as a whole document so that one may not, by pointing out a single sentence or clause, create an ambiguity.  S. Atl. Fin. Servs., Inc. v. Middleton, 356 S.C. 444, 447, 590 S.E.2d 27, 29 (2003); see also Yarborough v. Phoenix Mut. Life Ins. Co., 266 S.C. 584, 592, 225 S.E.2d 344, 349 (1976) (That construction will be adopted which will give effect to the whole instrument and to each of its various parts and provisions, if it is reasonable to do so.); J.T.M. Co., Inc. v. Vane, 283 S.C. 512, 516, 323 S.E.2d 794, 796 (Ct. App. 1984) (In determining the intent and purport of a contract, a court should not look solely to one clause read in isolation from the rest of the document; rather, it should consider the contents of the whole instrument.).
In this case, the opening paragraph of Article IX refers to casualty loss or damage to the Property . . . and the proceeds of all casualty insurance.  The remainder of Article IX guides the board in how to apply these insurance proceeds and what procedure to follow if the proceeds are deficient.  The clear, unambiguous intent of this provision is to provide the board guidance in the event of a casualty loss or damage caused by a casualty.
Moreover, we agree with the Regime that other provisions within the Regimes Master Deed and By-Laws specifically allow the assessment.  Article V, Section (e) of the Master Deed reads, in relevant part:

 The obligations of all Unit owners with regard to assessments for common expenses and the maintenance and repair of the individual Units shall be as provided in the By-Laws of the [Regime] . . . .

Article VII, Section 6(c) of the Regimes By-Laws provides, in pertinent part:

 All maintenance, repair and replacement to the common elements as defined in the Master Deed, the painting and decorating of the exterior doors and exterior window sash and the washing of exterior glass shall be made by the [Regimes] Board [of Directors] . . . and shall be charged to the Unit Owners as a common expense . . . .

Article VIII, Section (a) of the Master Deed defines the Regimes common elements, which include the foundations, roofs, perimeter walls, walls and partitions separating units, [and] load-bearing floors . . . .  
The Regimes Master Deed and By-Laws clearly provide for the assessment of all unit owners for construction defects with respect to any of the buildings within the Regime.  Additionally, this language complies with statutory law and the general purpose behind horizontal property regimes.  See S.C. Code Ann. § 27-31-240 (Supp. 2005) (The co-owners of the apartments are bound to contribute pro rata . . . toward the expenses of administration and of maintenance and repair of the general common elements.); Sterling Village Condo., Inc. v. Breitenbach, 251 So.2d 685, 688 (Fla. App. 1971) (Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others.).
II. Other Issues
The Aratas contend several material issues of fact exist about the proceeds from settlement of the above-referenced lawsuits.  Furthermore, they maintain the issue of whether the assessment would be used to pay for repair to buildings other than the Spinnaker buildings is a genuine issue of material fact for a jury.  Additionally, they assert the circuit court prematurely granted summary judgment because little discovery had taken place and their motion to amend was still pending.  Based on our conclusion that the Regimes Master Deed and By-Laws unambiguously allow such an assessment, we need not address these issues.
CONCLUSION
We hold the Regimes assessment complied with its operative documents.  Moreover, we find the Regime followed the procedure required by statute and the general considerations behind horizontal property regimes with respect to the assessment in this case.  Further, these conclusions render it unnecessary for this court to address the Aratas remaining contentions.  Accordingly, the circuit courts order is
AFFIRMED.
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The record does not reveal whether the circuit court heard or ruled upon this motion.
[3] Although the facts alleged in the Regimes memorandum are not supported by admissible evidence, the Aratas alleged the same scenario in their appellate brief.  Moreover, as will be shown, these facts are immaterial to the circuit courts decision.